855 F.2d 586
 Jean SPALDING, Individually and as Administrator of the
Estate of Alfred B.F. Spalding, a/k/a Ford
Spalding, Deceased, Appellant,
v.
AGRI-RISK SERVICES and Traders Insurance Company, Appellees.
 No. 87-2552.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 10, 1988.
Decided Aug. 30, 1988.
 
 W. Laird Hetlage, St. Louis, Mo., for appellant.
 Sharon A. Cooney, Kansas City, Mo., for appellees.
 Before WOLLMAN and BEAM, Circuit Judges, and RE,* Chief Judge.
 RE, Chief Judge.
 
 
 1
 Plaintiff, Jean Spalding, individually and as the administrator of the estate of her deceased son, Ford Spalding, sued in the United States District Court for the Western District of Missouri, to recover on a life insurance policy on a stallion. She appeals from an order which denied recovery and granted summary judgment in favor of defendants, Agri-Risk Services and Traders Insurance Company.
 
 
 2
 Defendants assert that, since the stallion had been "operated upon for castration," the insurance policy ceased to cover the insured animal. Plaintiff contends that defendants' failure to cancel the policy and return the premium payments, during a 4-month period when defendants were made aware of the facts which led to the humane destruction of the animal, raises issues of waiver or estoppel sufficient to defeat a motion for summary judgment.
 
 
 3
 The question presented on this appeal is whether, under Missouri law, there is a material question of fact sufficient to defeat a motion for summary judgment as to whether the insurance company, by its silence or inaction, has either waived its rights, or is estopped from asserting a condition of the insurance contract which provides for the cancellation of the coverage if the insured animal is castrated.
 
 
 4
 Since we hold that the record, when viewed in a light most favorable to plaintiff, raises questions of material fact as to either waiver or estoppel, as alleged by plaintiff, we reverse.
 
 I. THE FACTS
 
 5
 On November 10, 1983, Ford Spalding, a resident of Virginia, submitted an application for a $20,000 life insurance policy on his stallion, "Wind 'Un Sugar," to defendants, Traders Insurance Company and its managing agency, Agri-Risk Services. The application form, which was signed by Ford's mother, Jean, provided that "no operation is to be performed on any insured animal without the WRITTEN consent of the company unless the operation is necessary, as a result of a peril insured by the policy." (emphasis in original).
 
 
 6
 The policy application was granted, and, on December 6, defendants issued a policy to Ford Spalding for a 1-year period beginning on November 17, 1983. Condition 6 of the insurance policy provided that:
 
 
 7
 In the event of an animal being operated upon for castration or spaying this Insurance shall cease to cover such animal at midnight, local standard time, immediately prior to the day of the operation.
 
 
 8
 Plaintiff contends that neither she nor her son ever received a copy of the insurance policy.
 
 
 9
 In January 1984, Wind 'Un Sugar was castrated or "gelded." On May 15, 1984, Wind 'Un Sugar was diagnosed as suffering from an unrelated central nervous system disease. From May 15 until September 24 the horse was treated by the Spaldings' veterinarian, Dr. Daniel Flynn. Defendants' claims adjuster, Livestock Adjusters, Inc., was in contact with both the Spaldings and the defendants during this period. Livestock Adjusters forwarded several reports to the defendants on the condition of Wind 'Un Sugar. All of the correspondence referred to Wind 'Un Sugar as a "gelding." On August 24, 1984, Livestock Adjusters dispatched Dr. R. Reynolds Cowles, Jr., a veterinarian, to Orange, Virginia, to examine the horse. In August, both Dr. Flynn and Dr. Cowles recommended that the horse, which showed no signs of improvement, be destroyed for humane reasons. Livestock Adjusters, acting on behalf of the defendants, consented to the destruction, and on September 24, 1984, the animal was humanely destroyed. On October 11, Ford Spalding filed a claim under the insurance policy.
 
 
 10
 On January 17, 1985, Livestock Adjusters notified Ford Spalding that because Wind 'Un Sugar had been gelded in violation of Condition 6 of the insurance policy, the policy had been cancelled on midnight of the day before the operation. On March 4, 1985, defendants sent a check to Ford Spalding for reimbursement of unearned premiums.
 
 
 11
 On February 19, 1987, alleging that defendants were estopped from asserting the forfeiture or cancellation of the insurance policy, plaintiff sued in the Western District of Missouri. The district court rejected plaintiff's estoppel argument, and stated that "plaintiff has failed to prove that any question exists as to whether castration is an operation." Spalding v. Agri-Risk Servs., No. 87-0151-CV-W-8, slip op. at 9 (W.D.Mo. Oct. 8, 1987). The district court held that defendants were entitled to summary judgment because the Spaldings' "breach of a material part of the insurance contract allowed defendants to void the contract." Id. at 9-10.
 
 II. DISCUSSION
 
 12
 Summary judgment is to be granted when "there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court clarified the proper application of summary judgment when it stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. at 2552.
 
 
 13
 In determining whether a party moving for summary judgment has made a showing that there are no triable issues of fact, a court must view all inferences to be drawn from the underlying facts "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); see also Butler v. MFA Life Ins. Co., 591 F.2d 448, 451 (8th Cir.1979). Since summary judgment is a determination of law rather than fact, we need not defer to the district court's conclusions and reverse only if clearly erroneous, but rather, may review the matter de novo. See Caiola v. Carroll, 851 F.2d 395, 398 (D.C.Cir.1988) (citing Nepera Chem. Inc. v. Sea-Land Serv. Inc., 794 F.2d 688, 699 (D.C.Cir.1986)).
 
 
 14
 On appeal, plaintiff contends that defendants' silence, notwithstanding a 5-month series of communications and correspondence which referred to Wind 'Un Sugar as a gelding, together with its retention of premiums paid during this period, "estops" the defendants from asserting that the gelding of the animal in January 1984 resulted in the cancellation of the insurance coverage pursuant to Condition 6 of the policy.
 
 
 15
 Estoppel is founded upon equitable concepts of conscience and good faith. Because of one's conduct, words, or silence, a party may be estopped or barred from asserting a legal right, if, under the circumstances, its assertion would cause a manifest injustice. The terms "waiver" and "estoppel" are not synonymous. Nevertheless, in insurance law, since the result of their application is the same, they are often used interchangeably.
 
 
 16
 A "waiver" is "an intentional relinquishment of a known right * * *." Bartleman v. Humphrey, 441 S.W.2d 335, 343 (Mo.1969). The term "estoppel," however, "refers to an abatement raised by law of rights and privileges of the insurer where it would be inequitable to permit their assertion." 16B J. Appleman, Insurance Law and Practice 491 (1981). The equitable doctrine of estoppel requires "that the injured party relied on the conduct of the insurer or was misled by it to his prejudice." Martinelli v. Security Ins. Co., 490 S.W.2d 427, 433 (Mo.Ct.App.1972).
 
 
 17
 In circumstances similar to those presented in this case, in which an insurer, through its conduct, has implied that its right to forfeiture or cancellation will not be asserted, and the insured has undergone substantial expense in relying on the insurer's conduct, the Missouri courts have held that the insurer has "waived" its right to assert the forfeiture. Only a few cases need be mentioned to illustrate the clear and consistent policy of the courts of Missouri.
 
 
 18
 In Mangelsdorf v. Pennsylvania Fire Ins. Co., 224 Mo.App. 265, 26 S.W.2d 818 (1930), the insured sought to recover under an accident insurance policy after a sprinkler malfunction caused damage to seeds stored in his warehouse. After the accident, the insurer's agent instructed the insured to remove the seeds from the warehouse and take affirmative steps to salvage them. In complying with the agent's instructions, the insured incurred substantial expense. Subsequently, asserting that the insured had breached the contract by, among other things, not properly maintaining his warehouse, the insurer denied the claim. Affirming a jury verdict for the insured, the court stated that:
 
 
 19
 if the insurer, in its negotiations or transactions with the insured, after knowledge of the facts which would otherwise work a forfeiture of the policy, requires the insured, in compliance with the provisions of the policy, to do some act or acts by which trouble or expense is incurred, the right to insist upon a forfeiture will be thereby waived.
 
 
 20
 Id. at 271-72, 26 S.W.2d at 821; see also Daniel v. Aetna Life Ins. Co., 225 Mo.App. 357, 364-65, 36 S.W.2d 688, 692 (1931) (insurer "waives" defense of insured's failure to pay premiums on life insurance policy when, after death of insured, plaintiff beneficiary incurs expense in complying with insurer's directions to provide proof of insured's death); Tinsley v. Aetna Ins. Co., 199 Mo.App. 693, 704-05, 205 S.W. 78, 79-80 (1918) (insurer "waives" defense of insured's breach of contract provisions on a fire and accident insurance policy on a boat, when insurer directs insured, in accord with a contract provision, to undergo substantial expense in towing and mooring the damaged boat); Shearlock v. Mutual Life Ins. Co., 193 Mo.App. 430, 439, 182 S.W. 89, 92 (1916) (insurer "waives" statute of limitations defense when, with knowledge that insured's claim is time-barred, insurer supplies insured with claims form and "encourage[s] or induce[s] [the insured] to go to substantial expense in furnishing the proofs of loss or otherwise * * * "); Myers v. Maryland Casualty Co., 123 Mo.App. 682, 687, 101 S.W. 124, 126 (1907) (insurer "waives" defense of insured's failure to give timely notice of injury on accident insurance policy when insurer supplies insured with a claims form after receiving late notice, thereby giving the insured "the right to rely on the implied assurance contained in such conduct * * * ").
 
 
 21
 Jean Spalding contends that she and her son relied on the fact that from May to September, 1984, during which time they incurred expenses in caring for Wind 'Un Sugar, neither the defendants nor their claims adjuster ever informed them that the gelding of the horse in January 1984 would have been asserted as a forfeiture of the policy. She contends that the defendants were put on notice of the gelding since all correspondence with their claims adjuster referred to "Wind 'Un Sugar" as a gelding. Surely, the defendants cannot claim ignorance of the meaning of the word "gelding." Taking the facts in a light most favorable to the plaintiff, it is clear that the affidavits raise questions of material fact that, if determined in plaintiff's favor, would show that the Spaldings relied on defendants' silence or inaction.
 
 
 22
 On May 15, 1984 the Spaldings informed the defendants' claims adjuster, Livestock Adjusters, of the inception of Wind 'Un Sugar's central nervous system disorder. A representative of Livestock Adjusters interviewed Ford Spalding on May 17. On May 29, Livestock Adjusters submitted its first report to the defendants. This report specifically noted that Wind 'Un Sugar was a gelding. Livestock Adjusters also talked with Dr. Flynn, the veterinarian attending Wind 'Un Sugar, and obtained a medical report from him, which was forwarded to the defendants on July 18. It is noteworthy that both the medical report, and Livestock Adjuster's accompanying cover letter, described Wind 'Un Sugar as a gelding.
 
 
 23
 On August 21, 1984, Livestock Adjusters sent Dr. Cowles, a veterinarian, to examine Wind 'Un Sugar. After having received Dr. Cowles' report which detailed the worsening condition of the animal, Livestock Adjusters consented and agreed to the humane destruction of Wind 'Un Sugar. On October 24, 1984 Livestock Adjusters dispatched Dr. Cowles' report to the defendants. Both Dr. Cowles' report and Livestock Adjuster's accompanying cover letter, once again, described the insured horse as a gelding.
 
 
 24
 From May to September, 1984, the defendants not only did not inform the Spaldings that the insurance policy had been cancelled, but they also retained all premium payments made during this period. It was not until January 17, 1985, more than 2 months after Ford Spalding submitted his claim, that the defendants notified the Spaldings that the policy had been cancelled retroactively. Furthermore, the defendants did not return the "unearned" premiums to the Spaldings until March 4, 1985.
 
 
 25
 Giving the plaintiff the benefit of all reasonable inferences to be drawn from the facts, the conclusion is inescapable that the Spaldings could have relied on the defendants' silence or inaction in continuing the treatment of Wind 'Un Sugar. As stated in the Mangelsdorf case, "if the insurer * * *, after knowledge of the facts which would otherwise work a forfeiture of the policy, requires the insured * * * to do some act or acts by which trouble or expense is incurred, the right to insist upon a forfeiture will be thereby waived." Mangelsdorf, 224 Mo.App. at 271-72, 26 S.W.2d at 821. Clearly, therefore, there are questions of fact as to whether the Spaldings relied on the defendant's inaction, and continued to treat Wind 'Un Sugar on the assumption that the insurance policy was still in effect notwithstanding the gelding. If these factual questions are resolved in favor of the plaintiff, under Missouri law, the defendants will be deemed to have "waived" their right to assert that the gelding of Wind 'Un Sugar resulted in a forfeiture or cancellation of the policy pursuant to Condition 6 of the insurance policy.
 
 
 26
 Much attention and effort has been devoted by the parties to whether the castration or gelding of Wind 'Un Sugar was an operation within the meaning of the insurance application or policy. The defendants contend that the district court properly granted their motion for summary judgment because the plaintiffs have failed to raise any question of fact that the gelding was not an "operation" within the meaning of both the application and the insurance policy. However, since under the law of Missouri, there exist material questions of fact as to whether the defendants have "waived" their right to assert the forfeiture or cancellation provision, the court need not consider the defendants' argument as to what constitutes an "operation."
 
 III. CONCLUSION
 
 27
 On the record presented the court holds that there are questions of material fact, which, when viewed in a light most favorable to the plaintiff, establish that the Spaldings could have relied on the failure of the defendants or their claims adjuster, from May to December, 1984, to inform them that the gelding of Wind 'Un Sugar in January 1984, effected a forfeiture or cancellation of the insurance policy. Since the granting of summary judgment by the district court was inappropriate, we reverse.
 
 
 
 *
 The HONORABLE EDWARD D. RE, Chief Judge of the United States Court of International Trade, sitting by designation