# RAYMOND B. YATES, M. D., P. C. PROFIT SHARING PLAN, ET AL. *v.* HENDON, TRUSTEE

No. 02–458.   Argued January 13, 2004—Decided March 2, 2004

4

*James A. Holifield, Jr.,* argued the cause and filed briefs for petitioners.

*Matthew D. Roberts* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Deputy Solicitor General Kneedler, Howard M. Radzely, Allen H. Feldman, Nathaniel I. Spiller,* and *Ellen L. Beard.*

*C. Mark Troutman* argued the cause for respondent. With him on the brief was *John A. Walker, Jr.*\*

---

\**Mark E. Schmidtke* and *William J. Kayatta, Jr.,* filed a brief for UNUMProvident Corporation as *amicus curiae* urging reversal.

JUSTICE GINSBURG delivered the opinion of the Court.

This case presents a question on which federal courts have divided: Does the working owner of a business (here, the sole shareholder and president of a professional corporation) qualify as a "participant" in a pension plan covered by the Employee Retirement Income Security Act of 1974 (ERISA or Act), 88 Stat. 832, as amended, 29 U. S. C. § 1001 *et seq.* The answer, we hold, is yes: If the plan covers one or more employees other than the business owner and his or her spouse, the working owner may participate on equal terms with other plan participants. Such a working owner, in common with other employees, qualifies for the protections ERISA affords plan participants and is governed by the rights and remedies ERISA specifies. In so ruling, we reject the position, taken by the lower courts in this case, that a business owner may rank only as an "employer" and not also as an "employee" for purposes of ERISA-sheltered plan participation.

## I

### A

Enacted "to protect . . . the interests of participants in employee benefit plans and their beneficiaries," 29 U. S. C. § 1001(b), ERISA comprises four titles. Title I, 29 U. S. C. § 1001 *et seq.*, "requires administrators of all covered pension plans to file periodic reports with the Secretary of Labor, mandates minimum participation, vesting and funding schedules, establishes standards of fiduciary conduct for plan administrators, and provides for civil and criminal enforcement of the Act." *Nachman Corp.* v. *Pension Benefit Guaranty Corporation,* 446 U. S. 359, 361, n. 1 (1980). Title II, codified in various parts of Title 26 of the United States Code, "amended various [Internal Revenue Code] provisions . . . pertaining to qualification of pension plans for special tax treatment, in order, among other things, to conform to the standards set forth in Title I." 446 U. S., at 361, n. 1. Title

III, 29 U. S. C. § 1201 *et seq.*, "contains provisions designed to coordinate enforcement efforts of different federal departments, and provides for further study of [benefit plans]." 446 U. S., at 361, n. 1. Title IV, 29 U. S. C. § 1301 *et seq.*, "created the Pension Benefit Guaranty Corporation (PBGC) and a termination insurance program to protect employees against the loss of 'nonforfeitable' benefits upon termination of pension plans that lack sufficient funds to pay such benefits in full." 446 U. S., at 361–362, n. 1. See also *Mead Corp.* v. *Tilley*, 490 U. S. 714, 717 (1989); Brief for United States as *Amicus Curiae* 2.

This case concerns the definition and coverage provisions of Title I, though those provisions, indicating who may participate in an ERISA-sheltered plan, inform each of ERISA's four titles. Title I defines the term "employee benefit plan" to encompass "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both . . . ." 29 U. S. C. § 1002(3). The same omnibus section defines "participant" as "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . , or whose beneficiaries may be eligible to receive any such benefit." § 1002(7). "Employee," under Title I's definition section, means "any individual employed by an employer," § 1002(6), and "employer" includes "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan," § 1002(5).

### B

Dr. Raymond B. Yates was the sole shareholder and president of Raymond B. Yates, M. D., P. C., a professional corporation. 287 F. 3d 521, 524 (CA6 2002); App. to Pet. for Cert. 10a. The corporation maintained the Raymond B. Yates, M. D., P. C. Profit Sharing Plan (Profit Sharing Plan or Plan), for which Yates was the administrator and trustee. *Ibid.*

From the Profit Sharing Plan's inception, at least one person other than Yates or his wife was a participant. *Ibid.;* App. 269a. The Profit Sharing Plan qualified for favorable tax treatment under § 401 of the Internal Revenue Code (IRC). 287 F. 3d, at 524; App. 71a–73a. As required by both the IRC, 26 U. S. C. § 401(a)(13), and Title I of ERISA, 29 U. S. C. § 1056(d), the Plan contained an antialienation provision. That provision, entitled "Spendthrift Clause," stated in relevant part: "Except for . . . loans to Participants as [expressly provided for in the Plan], no benefit or interest available hereunder will be subject to assignment or alienation, either voluntarily or involuntarily." App. 252a.

In December 1989, Yates borrowed $20,000 at 11 percent interest from the Raymond B. Yates, M. D., P. C. Money Purchase Pension Plan (Money Purchase Pension Plan), which later merged into the Profit Sharing Plan. *Id.,* at 268a–269a. The terms of the loan agreement required Yates to make monthly payments of $433.85 over the five-year period of the loan. *Id.,* at 269a. Yates failed to make any monthly payment. 287 F. 3d, at 524. In June 1992, coinciding with the Money Purchase Pension Plan-Profit Sharing Plan merger, Yates renewed the loan for five years. App. 269a. Again, he made no monthly payments. In fact, Yates repaid nothing until November 1996. 287 F. 3d, at 524. That month, he used the proceeds from the sale of his house to make two payments totaling $50,467.46, which paid off in full the principal and interest due on the loan. *Ibid.* Yates maintained that, after the repayment, his interest in the Profit Sharing Plan amounted to about $87,000. App. to Pet. for Cert. 39a.

Three weeks after Yates repaid the loan to the Profit Sharing Plan, on December 2, 1996, Yates's creditors filed an involuntary petition against him under Chapter 7 of the Bankruptcy Code. *Id.,* at 12a; accord App. 300a. In August 1998, respondent William T. Hendon, the Bankruptcy Trustee, filed a complaint, pursuant to 11 U. S. C. §§ 547(b)

and 550, against petitioners Profit Sharing Plan and Yates, in his capacity as the Plan's trustee. App. 1a–3a. Hendon asked the Bankruptcy Court to "avoi[d] the . . . preferential transfer by [Yates] to [the Profit Sharing Plan] in the amount of $50,467.46 and [to] orde[r] [the Plan and Yates, as trustee,] to pay over to the [bankruptcy] trustee the sum of $50,467.46, plus legal interest . . . , together with costs . . . ." *Id.*, at 3a. On cross-motions for summary judgment, the Bankruptcy Court ruled for Trustee Hendon. App. to Pet. for Cert. 36a–50a.

The Bankruptcy Court first determined that the loan repayment qualified as a preferential transfer under 11 U. S. C. § 547(b).[1] App. to Pet. for Cert. 41a–42a. That finding was not challenged on appeal. The Bankruptcy Court then held that the Profit Sharing Plan and Yates, as trustee, could not rely on the Plan's antialienation provision to prevent Hendon from recovering the loan repayment. As "a self-employed

---

[1] Section 547(b) provides:

"Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

"(1) to or for the benefit of a creditor;

"(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

"(3) made while the debtor was insolvent;

"(4) made—

"(A) on or within 90 days before the date of the filing of the petition; or

"(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

"(5) that enables such creditor to receive more than such creditor would receive if—

"(A) the case were a case under chapter 7 of this title;

"(B) the transfer had not been made; and

"(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

This provision permits the bankruptcy trustee to avoid certain transfers of "property that would have been part of the [bankruptcy] estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier* v. *IRS*, 496 U. S. 53, 58 (1990).

owner of the professional corporation that sponsor[ed] the pension plan," the Bankruptcy Court stated, Yates could not "participate as an employee under ERISA and . . . [therefore could not] use its provisions to enforce the restriction on the transfer of his beneficial interest in the Defendant Plan." *Id.,* at 43a–44a. In so ruling, the Bankruptcy Court relied on Circuit precedent, including *SEC* v. *Johnston,* 143 F. 3d 260 (CA6 1998), and *Fugarino* v. *Hartford Life & Accident Ins. Co.,* 969 F. 2d 178 (CA6 1992).

The District Court affirmed the Bankruptcy Court's judgment. App. to Pet. for Cert. 9a–35a. Acknowledging that other Courts of Appeals had reached a different conclusion, *id.,* at 19a, the District Court observed that it was bound by Sixth Circuit precedent. According to the controlling Sixth Circuit decisions, neither a sole proprietor, *Fugarino,* 969 F. 2d, at 186, nor a sole owner of a corporation, *Agrawal* v. *Paul Revere Life Ins. Co.,* 205 F. 3d 297, 302 (2000), qualifies as a "participant" in an ERISA-sheltered employee benefit plan. App. to Pet. for Cert. 20a–21a. Applying Circuit precedent, the District Court concluded:

> "The fact Dr. Yates was not qualified to participate in an ERISA protected plan means none of the money he contributed to the Plan as an 'employee' was ever a part of an ERISA plan. The $50,467.46 he returned to the Plan was not protected by ERISA, because none of the money he had in the Plan was protected by ERISA." *Id.,* at 20a.

The Sixth Circuit affirmed the District Court's judgment. 287 F. 3d 521. The Court of Appeals adhered to its "published caselaw [holding] that 'a sole proprietor or sole shareholder of a business must be considered an employer and not an employee . . . for purposes of ERISA.' " *Id.,* at 525 (quoting *Fugarino,* 969 F. 2d, at 186). "[T]he spendthrift clause in the Yates profit sharing/pension plan," the appeals court accordingly ruled, "[was] not enforceable by Dr. Yates under

ERISA." 287 F. 3d, at 526. The Sixth Circuit's determination that Yates was not a "participant" in the Profit Sharing Plan for ERISA purposes obviated the question whether, had Yates qualified as such a participant, his loan repayment would have been shielded from the Bankruptcy Trustee's reach. See App. to Pet. for Cert. 46a–47a.

We granted certiorari, 539 U. S. 957 (2003), in view of the division of opinion among the Circuits on the question whether a working owner may qualify as a participant in an employee benefit plan covered by ERISA. Compare *Agrawal*, 205 F. 3d, at 302 (sole shareholder is not a participant in an ERISA-qualified plan); *Fugarino*, 969 F. 2d, at 186 (sole proprietor is not a participant); *Kwatcher* v. *Massachusetts Serv. Employees Pension Fund*, 879 F. 2d 957, 963 (CA1 1989) (sole shareholder is not a participant); *Giardono* v. *Jones*, 867 F. 2d 409, 411–412 (CA7 1989) (sole proprietor is not a participant); *Peckham* ·v. *Board of Trustees of Int'l Brotherhood of Painters and Allied Trades Union*, 653 F. 2d 424, 427–428 (CA10 1981) (sole proprietor is not a participant), with *Vega* v. *National Life Ins. Servs., Inc.*, 188 F. 3d 287, 294 (CA5 1999) (co-owner is a participant); *In re Baker*, 114 F. 3d 636, 639 (CA7 1997) (majority shareholder is a participant); *Madonia* v. *Blue Cross & Blue Shield of Virginia*, 11 F. 3d 444, 450 (CA4 1993) (sole shareholder is a participant).[2]

---

[2] The Courts of Appeals are also divided on whether working owners may qualify as "beneficiaries" of ERISA-sheltered employee benefit plans. Compare 287 F. 3d 521, 525 (CA6 2002) (case below) (sole shareholder is not a beneficiary of an ERISA-qualified plan); *Agrawal*, 205 F. 3d, at 302 (sole shareholder is not a beneficiary), with *Gilbert* v. *Alta Health & Life Ins. Co.*, 276 F. 3d 1292, 1302 (CA11 2001) (sole shareholder is a beneficiary); *Wolk* v. *UNUM Life Ins. of Am.*, 186 F. 3d 352, 356 (CA3 1999) (partner is a beneficiary); *Prudential.Ins. Co. of Am.* v. *Doe*, 76 F. 3d 206, 208 (CA8 1996) (controlling shareholder is a beneficiary); *Robinson* v. *Linomaz*, 58 F. 3d 365, 370 (CA8 1995) (co-owners are beneficiaries); *Peterson* v. *American Life & Health Ins. Co.*, 48 F. 3d 404, 409 (CA9 1995) (partner is a beneficiary). The United States, as *amicus curiae*, urges

## II

### A

ERISA's definitions of "employee," and, in turn, "participant," are uninformative. See *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U. S. 318, 323 (1992) ("ERISA's nominal definition of 'employee' as 'any individual employed by an employer' is completely circular and explains nothing." (citation omitted)). We therefore look to other provisions of the Act for instruction. See *ibid.* ERISA's text contains multiple indications that Congress intended working owners to qualify as plan participants. Because these indications combine to provide "specific guidance," *ibid.*, there is no cause in this case to resort to common law.[3]

Congress enacted ERISA against a backdrop of IRC provisions that permitted corporate shareholders, partners, and sole proprietors to participate in tax-qualified pension plans. Brief for United States as *Amicus Curiae* 19–20. Working shareholders have been eligible to participate in such plans since 1942. See Revenue Act of 1942, ch. 619, § 165(a)(4), 56 Stat. 862 (a pension plan shall be tax exempt if, *inter alia*, "the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated

---

that treating working owners as "beneficiaries" of an ERISA-qualified plan is not an acceptable solution. Brief for United States as *Amicus Curiae* 9 (The beneficiary approach "has no logical stopping point, because it would allow a plan to cover anyone it chooses, including independent contractors excluded by [*Nationwide Mut. Ins. Co.* v. *Darden*, 503 U. S. 318 (1992)]" and "fails to resolve participation questions for pension plans which, unlike welfare plans, tie coverage directly to service as an employee."); *id.*, at 24–25. This issue is not presented here, and we do not resolve it.

[3] Cf. *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U. S. 318 (1992), and *Clackamas Gastroenterology Associates, P. C.* v. *Wells*, 538 U. S. 440 (2003) (finding textual clues absent, Court looked to common law for guidance).

employees"). Two decades later, still prior to ERISA's adoption, Congress permitted partners and sole proprietors to establish tax-favored pension plans, commonly known as "H. R. 10" or "Keogh" plans. Self-Employed Individuals Tax Retirement Act of 1962, 76 Stat. 809; Brief for United States as *Amicus Curiae* 19. Thus, by 1962, working owners of all kinds could contribute to tax-qualified retirement plans.

ERISA's enactment in 1974 did not change that situation.[4] Rather, Congress' objective was to harmonize ERISA with longstanding tax provisions. Title I of ERISA and related IRC provisions expressly contemplate the participation of working owners in covered benefit plans. *Id.*, at 14–16. Most notably, several Title I provisions partially exempt certain plans in which working owners likely participate from otherwise mandatory ERISA provisions. Exemptions of this order would be unnecessary if working owners could not qualify as participants in ERISA-protected plans in the first place.

To illustrate, Title I frees the following plans from the Act's fiduciary responsibility requirements:

> "(1) a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees; or
>
> "(2) any agreement described in section 736 of [the IRC], which provides payments to a retired partner or deceased partner or a deceased partner's successor in interest." 29 U. S. C. § 1101(a).

The IRC defines the term "highly compensated employee" to include "any employee who . . . was a 5-percent owner at any time during the year or the preceding year." 26 U. S. C.

___

[4] A particular employee benefit plan may be covered by one title of ERISA, but not by another. See Brief for United States as *Amicus Curiae* 18, n. 9.

§ 414(q)(1)(A). A "5-percent owner," the IRC further specifies, is "any person who owns . . . more than 5 percent of the outstanding stock of the corporation or stock possessing more than 5 percent of the total combined voting power of all stock of the corporation" if the employer is a corporation, or "any person who owns more than 5 percent of the capital or profits interest in the employer" if the employer is not a corporation. § 416(i)(1)(B)(i). Under these definitions, some working owners would fit the description "highly compensated employees." Similarly, agreements that make payments to retired partners, or to deceased partners' successors in interest, surely involve plans in which working partners participate.

Title I also contains more limited exemptions from ERISA's fiduciary responsibility requirements. These exemptions, too, cover plans that ordinarily include working owners as participants. To illustrate, assets of an employee benefit plan typically must be held in trust. See 29 U. S. C. § 1103(a). That requirement, however, does not apply, *inter alia*, "to a plan . . . some or all of the participants of which are employees described in section 401(c)(1) of [the IRC]." § 1103(b)(3)(A). IRC § 401(c)(1)(A) defines an "employee" to include "a self-employed individual"; and IRC §§ 401(c)(1)(B) and (2)(A)(i), in turn, define "a self-employed individual" to cover an individual with "earned income" from "a trade or business in which personal services of the taxpayer are a material income-producing factor." This definition no doubt encompasses working sole proprietors and partners. 26 U. S. C. §§ 1402(a) and (c).

Title I also contains exemptions from ERISA's prohibited transaction provisions. Like the fiduciary responsibility exemptions, these exemptions indicate that working owners may participate in ERISA-qualified plans. For example, although Title I generally bars transactions between a plan and a party in interest, 29 U. S. C. § 1106, the Act permits, among other exceptions, loans to plan participants if certain

conditions are satisfied, §1108(b)(1). One condition is that loans must not be "made available to highly compensated employees . . . in an amount greater than the amount made available to other employees." §1108(b)(1)(B). As just observed, see *supra*, at 13–14, some working owners, including shareholder-employees, qualify as "highly compensated employees." Title I goes on to exclude "owner-employees," as defined in the IRC, from the participant loan exemption. §1108(d)(1). Under the IRC's definition, owner-employees include partners "who ow[n] more than 10 percent of either the capital interest or the profits interest in [a] partnership" and sole proprietors, but not shareholder-employees. 26 U. S. C. §401(c)(3). In sum, Title I's provisions involving loans to plan participants, by explicit inclusion or exclusion, assume that working owners—shareholder-employees, partners, and sole proprietors—may participate in ERISA-qualified benefit plans.

Provisions of Title IV of ERISA are corroborative. Brief for United States as *Amicus Curiae* 17, and n. 8. Title IV does not apply to plans "established and maintained *exclusively* for substantial owners," 29 U. S. C. §1321(b)(9) (emphasis added), a category that includes sole proprietors and shareholders and partners with a ten percent or greater ownership interest, §1322(b)(5)(A). But Title IV does cover plans in which substantial owners participate *along with* other employees. See §1322(b)(5)(B). In addition, Title IV does not cover plans established by "professional service employer[s]" with 25 or fewer active participants. §1321(b)(13). Yates's medical practice was set up as a professional service employer. See §1321(c)(2)(A) (a "professional service employer" is "any proprietorship, partnership, corporation . . . owned or controlled by professional individuals . . . the principal business of which is the performance of professional services"). But significantly larger plans—plans covering more than 25 employees—established

by a professional service employer would presumably qualify for protection.

Particularly instructive, Title IV and the IRC, as amended by Title II, clarify a key point missed by several lower courts: Under ERISA, a working owner may have dual status, *i. e.,* he can be an employee entitled to participate in a plan and, at the same time, the employer (or owner or member of the employer) who established the plan. Both Title IV and the IRC describe the "employer" of a sole proprietor or partner. See 29 U. S. C. § 1301(b)(1) ("An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer, and a partnership is treated as the employer of each partner who is an employee within the meaning of section 401(c)(1) of [the IRC]."); 26 U. S. C. § 401(c)(4) ("An individual who owns the entire interest in an unincorporated trade or business shall be treated as his own employer. A partnership shall be treated as the employer of each partner who is an employee within the meaning of [§ 401(c)(1)]."). These descriptions expressly anticipate that a working owner can wear two hats, as an employer and employee. Cf. *Clackamas Gastroenterology Associates, P. C.* v. *Wells,* 538 U. S. 440, 453 (2003) (GINSBURG, J., dissenting) ("Clackamas readily acknowledges that the physician-shareholders are 'employees' for ERISA purposes.").

In sum, because the statute's text is adequately informative, we need not look outside ERISA itself to conclude with security that Congress intended working owners to qualify as plan participants.[5]

Congress' aim is advanced by our reading of the text. The working employer's opportunity personally to partici-

---

[5] We do not suggest that each provision described *supra,* at 13–15 and this page, in isolation, would compel the Court's reading. But cf. *post,* at 25–26 (THOMAS, J., concurring in judgment). In combination, however, the provisions supply "specific guidance" adequate to obviate any need to expound on common law. See *Darden,* 503 U. S., at 323.

pate and gain ERISA coverage serves as an incentive to the creation of plans that will benefit employer and nonowner employees alike. See Brief for United States as *Amicus Curiae* 21–22. Treating working owners as participants not only furthers ERISA's purpose to promote and facilitate employee benefit plans. Recognizing the working owner as an ERISA-sheltered plan participant also avoids the anomaly that the same plan will be controlled by discrete regimes: federal-law governance for the nonowner employees; state-law governance for the working owner. See, *e. g., Agrawal,* 205 F. 3d, at 302 (because sole shareholder does not rank as a plan participant under ERISA, his state-law claims against insurer are not preempted). ERISA's goal, this Court has emphasized, is "uniform national treatment of pension benefits." *Patterson* v. *Shumate,* 504 U. S. 753, 765 (1992). Excepting working owners from the federal Act's coverage would generate administrative difficulties and is hardly consistent with a national uniformity goal. Cf. *Madonia,* 11 F. 3d, at 450 ("Disallowing shareholders . . . from being plan 'participants' would result in disparate treatment of corporate employees' claims, thereby frustrating the statutory purpose of ensuring similar treatment for all claims relating to employee benefit plans.").

We note finally that a 1999 Department of Labor advisory opinion accords with our comprehension of Title I's definition and coverage provisions. Pension and Welfare Benefits Admin., U. S. Dept. of Labor, Advisory Opinion 99–04A, 26 BNA Pension and Benefits Rep. 559 (hereinafter Advisory Opinion 99–04A). Confirming that working owners may qualify as participants in ERISA-protected plans, the Department's opinion concludes:

> "In our view, the statutory provisions of ERISA, taken as a whole, reveal a clear Congressional design to include 'working owners' within the definition of 'participant' for purposes of Title I of ERISA. Congress could not have intended that a pension plan operated so as to

satisfy the complex tax qualification rules applicable to benefits provided to 'owner-employees' under the provisions of Title II of ERISA, and with respect to which an employer faithfully makes the premium payments required to protect the benefits payable under the plan to such individuals under Title IV of ERISA, would somehow transgress against the limitations of the definitions contained in Title I of ERISA. Such a result would cause an intolerable conflict between the separate titles of ERISA, leading to the sort of 'absurd results' that the Supreme Court warned against in *Nationwide Mutual Insurance Co.* v. *Darden,* 503 U. S. 318 (1992)." *Id.,* at 560–561 (footnote omitted).

This agency view on the qualification of a self-employed individual for plan participation reflects a "body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore* v. *Swift & Co.,* 323 U. S. 134, 140 (1944).

B

The Sixth Circuit's leading decision in point—its 1992 determination in *Fugarino*—relied, in large part, on an incorrect reading of a Department of Labor regulation, 29 CFR § 2510.3–3. The *Fugarino* court read the Department's regulation to rule out classification of a working owner as an employee of the business he owns. Entitled "Employee benefit plan," the regulation complements § 3(3) of ERISA, 29 U. S. C. § 1002(3), which defines "employee benefit plan," see *supra,* at 7; the regulation provides, in relevant part:

"(b) Plans without employees. For purposes of title I of the Act and this chapter, the term 'employee benefit plan' shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section. For example, a so-called 'Keogh' or 'H. R. 10' plan under

which only partners or only a sole proprietor are participants covered under the plan will not be covered under title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under title I. . . .

"(c) Employees. *For purposes of this section:*

"(1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse, and

"(2) A partner in a partnership and his or her spouse shall not be deemed to be employees with respect to the partnership." 29 CFR § 2510.3–3 (2003) (emphasis added and deleted).

In common with other Courts of Appeals that have held working owners do not qualify as participants in ERISA-governed employee benefit plans, the Sixth Circuit apparently understood the regulation to provide a generally applicable definition of the term "employee," controlling for all Title I purposes. *Fugarino,* 969 F. 2d, at 185–186 ("As a result of [the] regulatio[n], a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA. Further, an employer cannot ordinarily be an employee or participant under ERISA." (citation omitted)). See also *Kwatcher,* 879 F. 2d, at 961 ("By its terms, the regulation unambiguously debars a sole shareholder . . . from 'employee' status, notwithstanding that he may work for the corporation he owns, shoulder to shoulder with eligible (non-owner) employees."); *Giardono,* 867 F. 2d, at 412 ("[This] regulatio[n] exclude[s] from the definition of an employee any individual who wholly owns a trade or business, whether incorporated or unincorporated.").

Almost eight years after its decision in *Fugarino*, in *Agrawal*, the Sixth Circuit implied that it may have misread the regulation: "Th[e] limiting definition of employee [in §2510.3–3(c)] addresses the threshold issue of whether an ERISA plan exists. It is not consistent with the purpose of ERISA to apply this limiting definition of employee to the statutory definitions of participant and beneficiary." 205 F. 3d, at 303. The Circuit, however, did not overrule its earlier interpretation. See 287 F. 3d, at 525 (case below) ("[T]he three judge panel before which this appeal is currently pending has no authority to overrule *Fugarino*."); *Agrawal*, 205 F. 3d, at 302 ("the decision in the present case is preordained by the *Fugarino* holding").

The Department of Labor's 1999 advisory opinion, see *supra*, at 17, interprets the "Employee benefit plan" regulation as follows:

"In its regulation at 29 C. F. R. 2510.3–3, the Department clarified that the term 'employee benefit plan' as defined in section 3(3) of Title I does not include a plan the only participants of which are '[a]n individual and his or her spouse . . . with respect to a trade of business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse' or '[a] partner in a partnership and his or her spouse.' The regulation further specifies, however, that a plan that covers as participants 'one or more common law employees, in addition to the self-employed individuals' will be included in the definition of 'employee benefit plan' under section 3(3). *The conclusion of this opinion, that such 'self-employed individuals' are themselves 'participants' in the covered plan, is fully consistent with that regulation.*" Advisory Opinion 99–04A, at 561, n. 7 (emphasis added).

This agency view, overlooked by the Sixth Circuit, see Brief for United States as *Amicus Curiae* 26, merits the Judicia-

ry's respectful consideration. Cf. *Clackamas Gastroenterology Associates, P. C.*, 538 U. S., at 449 (Equal Employment Opportunity Commission guidelines under the Americans with Disabilities Act of 1990 are persuasive).

The Department's regulation itself reveals the definitional prescription's limited scope. The prescription describes "employees" only "[f]or purposes of this section," *supra,* at 19 (emphasis deleted), *i. e.,* the section defining "employee benefit plans." Accordingly, the regulation addresses only what plans qualify as "employee benefit plans" under Title I of ERISA. Plans that cover only sole owners or partners and their spouses, the regulation instructs, fall outside Title I's domain.[6] Plans covering working owners *and* their non-owner employees, on the other hand, fall entirely within ERISA's compass.[7] See *Vega,* 188 F. 3d, at 294 ("We . . . interpret the regulatio[n] to define employee only for purposes of determining the existence of an ERISA plan."); *Ma-*

---

[6] Courts agree that if a benefit plan covers only working owners, it is not covered by Title I. See, *e. g., Slamen* v. *Paul Revere Life Ins. Co.,* 166 F. 3d 1102, 1105 (CA11 1999) (sole shareholder is not a participant where disability plan covered only him); *In re Watson,* 161 F. 3d 593, 597 (CA9 1998) (sole shareholder is not a participant where retirement plan covered only him); *SEC* v. *Johnston,* 143 F. 3d 260, 262–263 (CA6 1998) (owner is not a participant where pension plan covered only owner and "perhaps" his wife); *Schwartz* v. *Gordon,* 761 F. 2d 864, 867 (CA2 1985) (self-employed individual is not a participant where he is the only contributor to a Keogh plan). Such a plan, however, could qualify for favorable tax treatment. See Brief for United States as *Amicus Curiae* 18, n. 9.

[7] Section 2510.3–3's preamble supports this interpretation. The preamble states, in relevant part:

"According to the comments [concerning proposed § 2510.3–3], a definition of 'employee' excluding self-employed individuals might raise problems under section 404(a)(1) with respect to disbursements to self-employed individuals from 'Keogh' or 'H. R. 10' plans covering both self-employed individuals and 'common law' employees. *Therefore, the definition of 'employee' formerly appearing in proposed § 2510.3–6 has been inserted into § 2510.3–3 and restricted in scope to that section.*" 40 Fed. Reg. 34528 (1975) (emphasis added).

*donia,* 11 F. 3d, at 449–450 ("[T]he regulation does not govern the issue of whether someone is a 'participant' in an ERISA plan, once the existence of that plan has been established. This makes perfect sense: once a plan has been established, it would be anomalous to have those persons benefitting from it governed by two disparate sets of legal obligations.").

Also in common with other Courts of Appeals that have denied participant status to working owners, the Sixth Circuit's leading decision mistakenly relied, in addition, on ERISA's "anti-inurement" provision, 29 U. S. C. § 1103(c)(1), which prohibits plan assets from inuring to the benefit of employers. See *Fugarino,* 969 F. 2d, at 186 ("A fundamental requirement of ERISA is that 'the assets of a plan shall never inure to the benefit of any employer . . . .'"); *Kwatcher,* 879 F. 2d, at 960 ("Once a person has been found to fit within the 'employer' integument, [§ 1103(c)(1)] prohibits payments to him from a qualified plan."); *Giardono,* 867 F. 2d, at 411 ("It is a fundamental requirement of ERISA that '. . . the assets of a plan shall never inure to the benefit of any employer . . . .'").

Correctly read, however, the anti-inurement provision does not preclude Title I coverage of working owners as plan participants. It states that, with enumerated exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U. S. C. § 1103(c)(1). The provision demands only that plan assets be held for supplying benefits to plan participants. Like the Department of Labor regulation, see *supra,* at 18–19, the anti-inurement provision does not address the discrete question whether working owners, along with nonowner employees, may be participants in ERISA-sheltered plans. As the Fifth Circuit observed in *Vega:*

"Th[e] [anti-inurement] provision refers to the congressional determination that funds contributed by the employer (and, obviously, by the [nonowner] employees . . .) must never revert to the employer; it does not relate to plan benefits being paid with funds or assets of the plan to cover a legitimate pension or health benefit claim by an employee who happens to be a stockholder or even the sole shareholder of a corporation." 188 F. 3d, at 293, n. 5.

ERISA's anti-inurement provision is based on the analogous exclusive benefit provision in the IRC, 26 U. S. C. § 401(a)(2), which has never been understood to bar tax-qualified plan participation by working owners. See H. R. Conf. Rep. No. 93–1280, pp. 302–303 (1974); Brief for United States as *Amicus Curiae* 29. The purpose of the anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others. See, *e. g., Prudential Ins. Co. of Am.* v. *Doe,* 76 F. 3d 206, 209 (CA8 1996). Those concerns are not implicated by paying benefits to working owners who participate on an equal basis with nonowner employees in ERISA-protected plans.

In sum, the anti-inurement provision, like the Department of Labor regulation, establishes no categorical barrier to working owner participation in ERISA plans. Whether Yates himself, in his handling of loan repayments, see *supra,* at 8, engaged in conduct inconsistent with the anti-inurement provision is an issue not yet reached by the courts below, one on which we express no opinion.

\* \* \*

For the reasons stated, the judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion,

including consideration of questions earlier raised but not resolved. Specifically, given the undisputed facts concerning Yates's handling of the loan, *i.e.*, his failure to honor the periodic repayment requirements: (1) Did the November 1996 close-to-bankruptcy repayments, despite the prior defaults, become "a portion of [Yates's] interest in a qualified retirement plan . . . excluded from his bankruptcy estate," App. to Pet. for Cert. 40a; and (2) if so, were the repayments "beyond the reach of [the Bankruptcy] [T]rustee's power to avoid and recover preferential transfers," *id.*, at 47a?

*It is so ordered.*

JUSTICE SCALIA, concurring in the judgment.

The Court uses a sledgehammer to kill a gnat—though it may be a sledgehammer prescribed by *United States* v. *Mead Corp.*, 533 U. S. 218 (2001). I dissented from that case, see *id.*, at 257, and remain of the view that authoritative interpretations of law by the implementing agency, if reasonable, are entitled to respect. *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984).

In the present case the Solicitor General of the United States, in a brief signed by the Acting Solicitor of Labor, has put forward as the "considered view of the agency charged by Congress with the administration and enforcement of Title I of ERISA," an interpretation of the relevant terms of that Act which would allow working owners (including sole owners, such as Dr. Yates) to be plan participants under the Employee Retirement Income Security Act of 1974 (ERISA). Brief for United States as *Amicus Curiae* 26. There is no doubt that this position is the official view of the Department of Labor, and that it has not been contrived for this litigation. The Solicitor General's brief relies upon a Department of Labor advisory opinion, issued more than five years ago, which concluded that "the statutory provisions of ERISA, taken as a whole, reveal a clear Congressional design to include 'working owners' within the definition of 'par-

ticipant' for purposes of Title I of ERISA." Pension and Welfare Benefits Admin., U. S. Dept. of Labor, Advisory Opinion 99–04A (Feb. 4, 1999), 26 BNA Pension and Benefits Rep. 559, 560 (1999).

The Department's interpretive conclusion is certainly reasonable (the Court's lengthy analysis says that it is inevitable); it is therefore binding upon us. See *Barnhart* v. *Thomas*, 540 U. S. 20, 26 (2003). I would reverse the judgment of the Sixth Circuit on that basis. The Court's approach, which denies many agency interpretations their conclusive effect and thrusts the courts into authoritative judicial interpretation, deprives administrative agencies of two of their principal virtues: (1) the power to resolve statutory questions promptly, and with nationwide effect, and (2) the power (within the reasonable bounds of the text) to change the application of ambiguous laws as time and experience dictate. The Court's approach invites lengthy litigation in all the circuits—the product of which (when finally announced by this Court) is a rule of law that only Congress can change.

JUSTICE THOMAS, concurring in the judgment.

I agree with the Court that the judgment of the Court of Appeals should be reversed. The Court persuasively addresses the Court of Appeals' many errors in this case. See *ante*, at 18–23. I do not, however, find convincing the Court's reliance on textual "indications," *ante*, at 12. The text of the Employee Retirement Income Security Act of 1974 (ERISA) is certainly consistent with the Court's interpretation of the word "employee" to include so-called "working owners." * *Ibid.* However, the various Title I exemptions relied upon so heavily by the Court, see *ante*, at 13–15,

---

*The Court does not clearly define who exactly makes up this class of "working owners," even though members of this class are now considered categorically to fall under ERISA's definition of "employee."

are equally consistent with an interpretation of "employee" that would not include all "working owners."

As an example, the Court places weight on the exception to the exemption from 29 U. S. C. § 1106, which bars loans made to parties in interest that are "'made available to highly compensated employees . . . in an amount greater than the amount made available to other employees.'" *Ante,* at 15 (quoting 29 U. S. C. § 1108(b)(1)(B)). The Court notes that "some working owners . . . qualify as 'highly compensated employees.'" *Ante,* at 15. That may be true, but there are surely numerous "highly compensated employees" who would both be "employees" under the usual, common-law meaning of that term (and hence "employees" under ERISA, see *Nationwide Mut. Ins. Co.* v. *Darden,* 503 U. S. 318 (1992)), and would also not be considered "working owners" as the Court uses the term. It is entirely possible, then, that Congress was merely attempting to exclude these individuals from § 1106, rather than assuming that all "working owners" were "employees." Hence, the existence of this exception tells us nothing about whether Congress "intended working owners" to be "employees" under ERISA. *Ante,* at 12.

Since the text is inconclusive, we must turn to the common-law understanding of the term "employee." *Darden, supra,* at 322–323. On remand, then, I would direct the Court of Appeals to address whether the common-law understanding of the term "employee," as used in ERISA, includes Dr. Yates. I would be surprised if it did not, see *In re Baker,* 114 F. 3d 636, 639 (CA7 1997) (corporation's separate legal existence from shareholder must be respected); *Madonia* v. *Blue Cross & Blue Shield of Virginia,* 11 F. 3d 444, 448–449 (CA4 1993) (same), but this is a matter best resolved, in the first instance, by the court below.