

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. AP-77,037

---

### ROBERT LYNN PRUETT, Appellant

### v.

### THE STATE OF TEXAS

---

### ON DIRECT APPEAL
### FROM THE 156TH DISTRICT COURT OF
### BEE COUNTY

---

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, PRICE, WOMACK, HERVEY, COCHRAN, and ALCALÁ, JJ., joined. KEASLER, J., concurred.

### O P I N I O N

Appellant was convicted in 2002 of the capital murder of Correctional Officer Daniel Nagle while appellant was an inmate at the Texas Department of Criminal Justice's McConnell Unit. Appellant was sentenced to death. He filed a motion for post-conviction DNA and palm-print testing under Chapter 64 of the Code of Criminal Procedure, which the trial court[1] granted. The results of

---

[1] In this opinion, "trial court" or "trial judge" refers to the judge presiding over the Chapter 64 proceedings, rather than the one who presided over appellant's trial.

that test were inconclusive, and the trial judge found that it was not reasonably probable that appellant would have been acquitted had the new results been available at trial. Appellant appealed that decision to this Court.[2] We affirm the judgment of the trial court.

## I. Facts

Appellant was serving a 99-year prison sentence for his role, at age 15, in a 1995 murder. On December 17, 1999, a correctional officer took appellant to get new shoes, causing appellant to miss the distribution of hot lunches. He received a sack lunch instead. Appellant took his lunch to the recreation area, which was a violation of prison rules. Officer Nagle informed appellant that he would have to eat his lunch before entering the recreation area and wrote a disciplinary charge against him. Later that afternoon, Officer Nagle was stabbed eight times with a shank made of a metal rod sharpened to a point at one end and wrapped in tape at the other end. He died at the scene. The autopsy report indicated that Officer Nagle died of a heart attack resulting from the stab wounds. The murder weapon was found at the scene, along with the disciplinary report charging appellant with bringing food into an unauthorized area, which had been torn into several pieces.

At trial, the state's case relied primarily on the testimony of guards and inmates who were present at the McConnell Unit on the day of Nagle's death, including testimony from multiple inmates that they witnessed the attack. Other inmates testified that appellant had told them he intended to kill Nagle or that they witnessed appellant acting excited and jovial immediately following Nagle's death. Appellant's defensive theory was that he had been framed. The jury convicted him of capital murder, and appellant was sentenced to death.

---

[2] Appeal is directly to this Court because appellant was sentenced to death. TEX. CODE CRIM. PROC. art. 64.05.

In May of 2013, appellant applied for post-conviction testing of a palm print found on one of the pieces of the disciplinary report for comparison against the palm-print database maintained by the Department of Public Safety (DPS). He also requested DNA testing of the epithelial (skin) cells in the palm print using processes that were unavailable at the time of his trial. The state did not object, and the trial court granted the motion. *See generally* TEX. CODE CRIM. PROC. art. 64.03.

Upon completion of testing, the trial court held a hearing to resolve the legal issues related to those results. *See* TEX. CODE CRIM. PROC. art. 64.04. The DPS database did not yield a match to the palm print. Upon conducting the requested DNA testing, the laboratory found markers at several loci, but the twelve allele at the D13 locus was the only marker present in an amount beyond the analytical threshold. One marker is not a sufficient profile to declare a known person to be a match, but known profiles not including the twelve allele at the D13 locus could be excluded as the source of the palm print. Known DNA profiles of appellant and Officer Nagle both contain a twelve allele at the D13 locus, so neither man could be eliminated as the source of the palm print. The twelve allele is present at the D13 locus in the DNA profiles of "approximately 20% of the Asian and Hispanic populations, 30% of the Caucasian population, and 40% of the African American population." II R.R. 4. The trial court found that the inconclusive DNA evidence did not support a reasonable probability that appellant would have been acquitted had that evidence been available at his trial. *See* TEX. CODE CRIM. PROC. art. 64.04.

## II. Discussion

We review de novo the trial court's determination that appellant failed to show a reasonable probability that the verdict would have been different had this evidence been available at trial. *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2003), *reh'g denied*, *cert. denied* 541 U.S.

1040 (2004).

In this case, eyewitnesses testified to each of the following: appellant's intent and preparation to kill Officer Nagle, seeing appellant assault Officer Nagle, and seeing appellant bloody and worked up after the killing. After the attack, appellant laughed and joked that Officer Nagle could no longer pursue the disciplinary action against him.

The DNA test results in this case were "inconclusive." II R.R. 3 (lab report introduced as exhibit at Chapter 64 hearing). By definition, inconclusive results do not establish a reasonable probability of anything. The additional testing under Chapter 64 did not exclude appellant as the perpetrator, and ample evidence of his guilt was presented at trial.

### III. Conclusion

The results of the Chapter 64 DNA testing do not support a reasonable probability of a different outcome by a preponderance of the evidence. Thus, we affirm the judgment of the trial court.


Delivered: October 22, 2014
Do not publish