

FILED

Aug 25 2016, 7:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tricia Rose Tanoos
Modesitt Law Firm, P.C.
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Kendra G. Gjerdingen
Kathryn M. Cimera
Mallor Grodner LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Estate of Kelly Ecker, by its
Personal Representative, Patricia
Ann Leturgez,

*Appellant,*

v.

Estate of George Scott Samson,

*Appellee*

August 25, 2016

Court of Appeals Case No.
84A01-1602-ES-430

Appeal from the Vigo Superior
Court

The Honorable Lakshmi Reddy,
Judge

Trial Court Cause No.
84D02-1411-ES-8302

**Bailey, Judge.**

# Case Summary

The Estate of Kelly Ecker, by its Personal Representative, Patricia Ann Leturgez ("the Ecker Estate"), appeals a summary judgment order denying the Ecker Estate's motion for summary judgment against the Estate of George Scott Samson ("the Samson Estate") and granting the summary judgment motion of Intervenors Jennifer Samson, Maria Samson, and Katherine Samson ("the Samson Daughters"). The Ecker Estate presents the sole issue of whether the trial court erred as a matter of law in determining that the George S. Samson M.D. Profit Sharing Plan and Trust ("the Profit Sharing Plan") was, pursuant to Indiana Code Section 32-17-13-1(b), property specifically excluded from the definition of a "nonprobate transfer" recoverable to pay estate claims. We affirm.

# Facts and Procedural History

On October 5, 2014, George Samson ("George") shot and killed his wife, Kelly Ecker, and then killed himself. In November of 2014, the Samson Estate was opened. Old National Wealth Management was appointed the Personal Representative of the then-unsupervised estate. At the request of the Ecker Estate, the Samson Estate was converted to supervised administration.

The Ecker Estate filed a claim against the Samson Estate in the amount of $5,000,000.00. Kathy Sturgeon, Guardian of Kelly Ecker's minor child, L.O.E., filed a $2,000,000.00 claim. Samson's ex-wife filed a claim in the

amount of $75,655.18 and each of the Samson Daughters filed a claim alleging entitlement to a one-third share of the probate assets and any non-probate assets recoverable by the Samson Estate.

[4] On March 11, 2015, the Ecker Estate filed a wrongful death action, naming the Samson Estate as a defendant.[1] On March 27, 2015, the Samson Estate filed an Inventory valuing estate assets at $289,117.02. On April 13, 2015, Old National Wealth Management filed a petition for a court order determining the distribution of the Profit Sharing Plan, an individual retirement account, and a Union Hospital 403(b) Retirement Plan.

[5] After mediation, the parties agreed to payment of the claim of Samson's ex-wife. The Ecker Estate and the Samson Daughters filed cross-motions for summary judgment. A hearing was conducted on January 5, 2016. The parties stipulated that the Union Hospital and individual retirement accounts were non-probate assets not recoverable by the personal representative for the payment of the Samson Estate creditors. One asset remained in dispute, specifically, the Profit Sharing Plan valued at approximately $567,065.00.

[6] On January 28, 2016, the trial court entered an order on the cross-motions for summary judgment, concluding that the Profit Sharing Plan was not a recoverable asset. This appeal ensued.

---

[1] The Guardian of L.O.E. filed a separate complaint for damages against Old National Wealth Management.

# Discussion and Decision

## Standard of Review

[7] A trial court's grant of summary judgment on appeal to this Court is "clothed with a presumption of validity," and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009). Our standard of review is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269-70 (Ind. 2009) (internal citations omitted). Our standard of review is not altered by the fact that the parties made cross-motions for summary judgment. *Indiana Farmers Mut. Ins. Grp. v. Blaskie*, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000). Instead, we

consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

[8] Pure questions of law, such as issues of statutory construction, are particularly appropriate for summary resolution. *Evansville Courier & Press v. Vanderburgh Co. Health Dep't*, 17 N.E.3d 922, 927-28 (Ind. 2014). Our review is de novo. *Id.* Likewise, the interpretation of a contract presents a pure question of law to be reviewed de novo. *Specialty Foods of Ind., Inc. v. City of South Bend*, 997 N.E.2d 23, 26 (Ind. Ct. App. 2013).

# Analysis

[9] The Profit Sharing Plan had a single employee-participant, George, and he was also the named trustee and administrator. According to the terms of the Profit Sharing Plan, the beneficiaries of the $567,065.00 fund were the Samson Daughters, and they sought distribution to themselves. However, because the Samson Estate was insolvent, the Ecker Estate sought to have the personal representative of the Samson Estate recover funds from the Profit Sharing Plan and pay those funds to the Samson Estate claimants.

[10] Pursuant to Indiana Code Section 32-17-13-2(a), proceeds from a nonprobate transfer may be used to pay allowed claims against a decedent's estate:

> Except as otherwise provided by statute, a transferee of a nonprobate transfer is subject to liability to a decedent's probate estate for:
>
> (1) allowed claims against the decedent's probate estate; and

(2) statutory allowances to the decedent's spouse and children

to the extent the decedent's probate estate is insufficient to satisfy those claims and allowances.

Indiana Code Section 32-17-13-1(a) defines a "nonprobate transfer" as "a valid transfer effective at death" made by a transferor whose last domicile was in Indiana and who, "immediately before death had the power, acting alone, to prevent transfer of the property by revocation or withdrawal" and use the property for the transferor's benefit or apply the property to discharge claims against the transferor's probate estate.

Subsection (b) specifically excludes a transfer at death (other than a transfer to or from the decedent's probate estate) of:

(1) a survivorship interest in a tenancy by the entireties real estate;

(2) a life insurance policy or annuity;

(3) the death proceeds of a life insurance policy or annuity;

(4) an individual retirement account or a similar account or plan; or

(5) benefits under an employee benefit plan.

I.C. § 32-17-13-1(b).

If the legislature has spoken clearly and unambiguously on the point in question, there exists no room for judicial construction. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011). We do not construe a facially unambiguous statute, but rather give effect to the ordinary and plain meaning of the language used. *Id.* at 829. Here, the exclusions of the nonprobate statute are clearly set forth, and we are required to determine whether a contract falls within its purview.

The objective of a court when it interprets a contract is to determine the intent of the parties at the time the contract was made by examining the language used in the contract. *Specialty Foods*, 997 N.E.2d at 26. In determining the intention of the parties, a contract is to be considered in light of the circumstances existing at the time it was made. *Id.* For example, the court is to consider the nature of the agreement, the facts and circumstances leading up to the execution of the contract, the relationship of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. *Id.*

Initially, the parties dispute whether George, under the terms of the Profit Sharing Plan, "immediately before death had the power, acting alone, to prevent transfer of the property by revocation or withdrawal," consistent with Indiana Code Section 32-17-13-1(a). The Samson Daughters point out that the plan was designed to provide for withdrawals only upon disability, death, or retirement (with a "Normal Retirement Age" of 60), and that there would have been tax consequences associated with early revocation. The Ecker Estate

argues that George was in total control of the Profit Sharing Fund and thus satisfied the statutory criteria of having the power of revocation.

[16] Our review of the Profit Sharing Plan supports the latter contention. The Profit Sharing Plan was structured so that George was the employer, the employee, the trustee, and the administrator. It provided that the "employer shall have the right to terminate by delivering notice to the Trustee." (App. at 37.) George was thus in sole control and empowered to revoke the plan and direct distribution of the funds. Although there may well have been adverse tax consequences had he decided to terminate the plan, George had the power to do so.

[17] However, this is not the end of the inquiry, in light of the exclusions of subsection (b) of Indiana Code Section 32-17-13-1. Even where the requisite transferor control is present, the statute provides that certain categories of property are sheltered from recovery and distribution to probate claimants. These include an individual retirement account, a similar account or plan, and benefits under an employee benefit plan.

[18] The designated materials show that the Profit Sharing Plan conferred a right to receive payment on account of age, and contemplated distribution of the funds beginning at the Normal Retirement Age. This comports with the common understanding of a retirement plan. The plan language includes a reference to rollover "from another eligible retirement plan." (App. at 20.) The administrator annually filed an Internal Revenue Service form 5500-EZ, a form

for tax-deferred retirement plans for a single participant (inclusive of an owner and a spouse). Clearly, the plan was intended to provide tax-deferred retirement benefits. A contract of this type is encompassed by the clear exclusionary language in the relevant probate statute.

[19] The Ecker Estate takes the position that a profit sharing plan and trust "not protected by Federal law from creditors" should not be protected from creditors under Indiana probate law. Appellants' Brief at 3. The Ecker Estate directs our attention to *Yates v. Hendon*, 541 U.S. 1 (2004), which concerned close-to-bankruptcy loan repayments to a profit sharing plan, made by the sole shareholder/president of the professional corporation that maintained the plan.

[20] In *Yates*, the Supreme Court was presented with a "question on which federal courts have divided: Does the working owner of a business (here, the sole shareholder and president of a professional corporation) qualify as a 'participant' in a pension plan covered by the Employee Retirement Income Security Act of 1974 (ERISA or Act), 88 Stat. 832, as amended, 29 U.S.C. § 1001 *et seq.*" *Id*. at 6. The Court answered that question in the affirmative, finding the text of ERISA "adequately informative" to conclude that Congress intended working owners to qualify as plan participants. *Id.* at 16. The Court recognized: "[u]nder ERISA, a working owner may have dual status, i.e., he can be an employee entitled to participate in a plan and, at the same time, the employer (or owner or member of the employer) who established the plan." *Id.*

[21] The Court explained its holding that a working owner may qualify as a participant in an ERISA-protected plan, when the plan covers one or more employees other than the owner and spouse:

> If the plan covers one or more employees other than the business owner and his or her spouse, the working owner may participate on equal terms with other plan participants. Such a working owner, in common with other employees, qualifies for the protections ERISA affords plan participants and is governed by the rights and remedies ERISA specifies. In so ruling, we reject the position, taken by the lower courts in this case, that a business owner may rank only as an "employer" and not also as an "employee" for purposes of ERISA-sheltered plan participation.

*Id.* at 6.[2]

[22] According to the Ecker Estate, the requirement of more than one employee should likewise be imposed here. The Ecker Estate urges that the Profit Sharing Plan should not be protected by Indiana probate law because it "has no employee other than Dr. Samson himself" and thus "there are no innocent employee participants in the plan." Appellants' Brief at 8. However, *Yates* is not directly on point. It is undisputed that the Profit Sharing Plan is not an

---

[2] The case was remanded for consideration of unresolved questions, specifically, whether the close–to-bankruptcy repayments became a portion of Yates's interest in a qualified retirement plan excluded from the bankruptcy estate and, if so, were the repayments beyond the reach of the Bankruptcy Trustee's power to recover preferential transfers. *Yates*, 541 U.S. at 24.

ERISA-sheltered plan. We are not concerned with a federal statute, but rather with an Indiana probate statute.

[23] Ultimately, the Ecker Estate asks that we provide restrictions upon the broad exclusionary language of Indiana Code Section 32-17-13-1(b). However, courts may not engraft new words onto a statute or add restrictions where none exist. *Kitchell v. Franklin*, 997 N.E.2d 1020, 1026 (Ind. 2013). The Profit Sharing Plan falls within the exclusionary language of 32-17-13-1(b) and is not recoverable by the personal representative of the Samson Estate for the payment of allowable probate claims. Although we are mindful of the tragic circumstances preceding this litigation, the law compels this result.

# Conclusion

[24] The trial court did not err in denying the Ecker Estate's summary judgment motion and granting the summary judgment motion of the Samson Daughters.

[25] Affirmed.

[26] Riley, J., and Barnes, J., concur.