Dani BAR–DAVID, Michal Bar–David, and Octal Corporation, Plaintiff,

v.

ECONOMIC CONCEPTS, INC., Kenneth Hartstein, Nati Financial, LLC, Amir Abramov, Arthur D. Shankman & Co., Arthur D. Shankman, Pension Strategies, LLC, and David Burke, Defendants.

Civ. No. 2:13–5885 (KM)(MCA).

United States District Court, D. New Jersey.

Signed Sept. 22, 2014.

Arthur L. Porter, Jr., Alan C. Thomas, Fischer, Porter & Thomas PC, Englewood Cliffs, NJ, for Plaintiff.

Kenneth R. Rothschild, Golden Rothschild Spagnola Lundell Levitt & Boylan, Bridgewater, NJ, Joel M. Wertman, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, William Gaynor Winget, Harris Bruce Katz, Winget Spadafora & Schwartzberg, LLP, Bennet Dann Zurofsky, Newark, NJ, Eric William Swartz, Winget, Spadafora & Schwartzberg, LLP, New York, NY, Garry Thomas Stevens, Winget, Spadafora & Schwartzberg LLP, Jersey City, NJ, for Defendants.

## OPINION

KEVIN McNULTY, District Judge.

This matter comes before the court on the Report and Recommendation ("R & R") (ECF No. 57) of Hon. Madeline C. Arleo, United States Magistrate Judge, recommending that the Plaintiffs' motion to remand this action to State court (ECF No. 13–1) be granted. For the reasons set forth below, the R & R will be adopted, and the motion to remand will be **granted.**

## I. BACKGROUND

Plaintiffs Dani Bar–David, Michal Bar–David, and Octal Corporation (collectively "Bar–David") allege that Defendants[1] fraudulently induced Bar–David to set up and continue to fund a defined benefit pension plan ("Plan") by misrepresenting and omitting material facts about the legal status of such a plan under 26 U.S.C. § 412(i). (Compl. at ¶¶ 1, 3–6, 10–13, ECF No. 1—Exhibit A). Bar–David alleges that, contrary to Defendants' misrepresentations, the Plan was an abusive tax shelter that was not was compliant with the Internal Revenue Code (IRC) and Internal Revenue Service (IRS) regulations and therefore did not qualify as a tax deductible and safe investment. (*Id.* at ¶ 10). Bar–David further alleges that Defendants knew or should have known that the Plan did not comply with the IRC. Bar–David alleges that after an IRS audit revealed the Plan's non-compliance with the tax code, Bar–David was forced to pay back taxes, penalties, and interest. (*Id.* at ¶¶ 54–58).

The Complaint alleges that Defendant Amir Abramov ("Abramov") gave Dani Bar–David insurance, retirement, and investment advice, and first suggested that Dani Bar–David meet with Arthur D. Shankman, an attorney and financial planning expert. (*Id.* at ¶ 39). Shankman, holding himself out as an expert in 412(i)

---

1. To clarify, Bar–David brought this against the following defendants: Economic Concepts, Inc., Kenneth Hartstein, Nati Financial, LLC, Amir Abramov, Arthur D. Shankman & Co., Arthur D. Shankman, Pension Strategies, LLC, and David Burke. Only Arthur D. Shankman & Co., Arthur D. Shankman, and Pension Strategies, LLC oppose Bar–David's motion to remand.

plans, became Dani Bar–David's financial adviser. (*Id.* at ¶ 40). After a series of meetings, Abramov and Shankman allegedly induced Dani Bar–David to participate in the Plan. (*Id.* at ¶¶ 40, 41).

During those meetings, Bar–David alleges, Shankman, individually and on behalf of Arthur D. Shankman & Co. (collectively "Shankman") and Abramov made, *inter alia,* the following misrepresentations to Bar–David:

- The Plan was a tax advantaged retirement investment that would provide benefits including a death benefit;
- The Plan would be paid for in five (5) years of contributions;
- The contributions to the Plan are 100% tax deductible;
- The Plan was a safe investment with no risk;
- The Plan was compliant with the Internal Revenue Code and IRS regulations and has been approved by the IRS;
- The investment in the Plan was guaranteed to grow at a minimum rate of return of 5%;
- The principal of Plaintiffs' contributions into their 412(i) Plan would always be safe and could never be lost;
- Plaintiffs' investment would grow at a minimum rate of return of 5%;
- A 412(i) plan was like a retirement plan and the contributions were considered by the IRS to be an ordinary and necessary business expense; and
- Plaintiffs could have access to their investment after ten (10) years at which time Plaintiffs could withdraw their money tax-free.

(R & R at 767–68, citing Compl. at ¶¶ 41, 63). Bar–David further alleges that Abramov and Shankman fraudulently omitted the following in their representations of the Plan:

- That a substantial percentage of the money invested by Plaintiffs was used to pay [Defendants'] exorbitant commissions and that virtually all of the money invested during the first year was immediately lost because of this;
- That the Plan would be funded with insurance policies that the IRS considered to be "springing cash value" policies that in turn would cause scrutiny of the Plan by the IRS;
- That the 412(i) Plan was a highly risky investment for the Plaintiffs;
- That the IRS perceived these type of plans as abusive tax shelters and not compliant with IRC 412(i) and that the IRS was not going to allow the deduction to the contribution into these types of plans;
- That the IRS viewed these types of plans as "listed transactions";
- The Plan did not comply with the Internal Revenue Code;
- The contributions to the plan were not tax deductible;
- The Plaintiffs will owe income tax on their contributions to the Plan;
- Contributions paid into a 412(i) plan would not be considered an ordinary and necessary business expense by the IRS;
- The IRS would in all reasonable probability assess substantial penalties and interest.

(R & R at 768–69, citing Compl. at ¶¶ 47, 53, 66).

Bar–David also alleges that Pension Strategies, LCC ("Pension Strategies"), the third-party administrator of the Plan, knew or should have known material facts

about the Plan that Pension Strategies failed to disclose. (Compl. at ¶¶ 51–53).

Bar–David filed this Complaint on August 28, 2013, in Superior Court in Essex County, New Jersey, asserting claims against all Defendants for: 1) fraud, 2) negligent misrepresentation; 3) breach of fiduciary duty; 4) negligence; 5) unjust enrichment; 6) money had and money received; 7) violation of the New Jersey Consumer Fraud Act; 8) violation of the New Jersey RICO Act; 9) breach of contract; and 10) breach of the duty of good faith and fair dealing. (R & R at 769; Compl. at ¶¶ 62–101).

Pension Strategies then removed the action to this Court on October 3, 2013, asserting, *inter alia,* that: 1) the Employee Retirement Income Security Act of 1974 (ERISA) preempts Bar–David's state law claims, and 2) federal tax questions appear on the face of the Complaint. (ECF No. 1). Bar–David then moved to remand the action to state court, asserting that this federal court did not have subject matter jurisdiction over the action. (ECF No. 13). Only defendants Pension Strategies and Shankman opposed Bar–David's motion to remand. (ECF Nos. 18, 21).

Magistrate Judge Arleo issued a Report and Recommendation, recommending that the Court grant the motion to remand because the prerequisites of federal question jurisdiction did not appear on the face of the Complaint. *See* 28 U.S.C. § 1331. (ECF No. 57). She reasoned, soundly, that the Plan did not qualify as an ERISA plan, and therefore that ERISA preemption did not apply. Judge Arleo did not need to carry her analysis any further to establish that federal court jurisdiction was not appropriate.

Pension Strategies and Shankman objected to the R & R, arguing that Judge Arleo's ERISA analysis was flawed and that she did not address their arguments that federal question jurisdiction arose from federal tax issues appearing on the face of the Complaint. (ECF Nos. 58, 59).

Based on the objections of Pension Strategies and Shankman, I now address the issues of whether ERISA preemption applies and whether potential federal tax issues warrant this court's exercising federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331. For the reasons set forth below, I find that the Court does not have subject matter jurisdiction, and remand the case to state court.

## II. DISCUSSION

### a. Removal and remand standards

 Pursuant to the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed by the defendants to the appropriate district court where the action is pending. 28 U.S.C. § 1441(a). Removal is not appropriate if the case does not fall within the district court's original federal question jurisdiction and the parties are not diverse. *See U.S. Express Lines Ltd. v. Higgins,* 281 F.3d 383, 389 (3d Cir.2002) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). The party that asserts jurisdiction bears the burden of showing at all stages of the litigation that subject matter jurisdiction is proper in the federal court. *Samuel–Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir.2004) (citing *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir. 1993)).

 The Third Circuit has cautioned that 28 U.S.C. § 1441 must be strictly construed against removal. *Samuel–Bassett,* 357 F.3d at 396, 403 (citing *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111

(3d Cir.1990)). To that end, all doubts should be resolved in favor of remand. *Id.; Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir.1985) (internal citations omitted); *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987). Accordingly, "[w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Phila. Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL–CIO v. Ridge,* 150 F.3d 319, 323 (3d Cir.1998) (quoting *Renne v. Geary,* 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991)).

A party may object to a Magistrate Judge's report and recommendation within 14 days of being served with a copy of the recommended disposition. L. Civ. R. 72.1(c)(2); Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C). The district court "shall make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c)(2); 28 U.S.C. § 636(b)(1). *See, e.g., Brown v. Astrue,* 649 F.3d 193, 195 (3d Cir.2011) (Section 636(b)(1) requires district courts to review *de novo* those portions of the report or specific findings to which objection is made, unless the objection is not timely or specific); *United States v. Lightman,* 988 F.Supp. 448, 457 (D.N.J.1997). The district court may consider the record developed before the Magistrate Judge, but may also receive further evidence. Fed.R.Civ.P. 72(b)(3); L. Civ. R. 72.1(c)(2).

### b. Federal question jurisdiction

█ Under the well-pleaded complaint rule, a cause of action "arises under" federal law, and removal is proper, only if there is a federal question presented on the face of the plaintiffs properly pleaded complaint. *Dukes v. U.S. Healthcare,* 57 F.3d 350, 353 (3d Cir.1995) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Bar–David's Complaint facially asserts only state law causes of action. Pension Strategies and Shankman argue, however, that Bar–David's state law claims are completely preempted by ERISA, and that federal tax issues give rise to federal question jurisdiction under 28 U.S.C. § 1331.

### i. ERISA preemption

█ The complete preemption doctrine is an exception to the well-pleaded complaint rule: "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Dukes,* 57 F.3d at 354 (citing same); *see generally Goepel v. Nat'l Postal Mail Handlers Union,* 36 F.3d 306, 309–13 (3d Cir.1994) (discussing the Court's complete-preemption jurisprudence). The complete preemption doctrine applies when

> the pre-emptive force of [the federal statutory provision] is so powerful as to displace entirely any state cause of action [addressed by the federal statute]. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [the federal provision].

*Dukes,* 57 F.3d at 354 (quoting *Franchise Tax Bd.,* 463 U.S. at 23, 103 S.Ct. 2841). When the federal law completely preempts a state law cause of action, a claim within the scope of that federal law is federal in nature, even if it is pleaded in terms of state law, and it is therefore removable under 28 U.S.C. § 1441. *Beneficial Nat'l*

*Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

Although ERISA preemption is broad, it is not all-encompassing. The Supreme Court has "addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Inc. Co.,* 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Thus, even though "[t]he governing text of ERISA is clearly expansive" in prescribing preemption for any state law claims that "relate to any employee benefit plan," the Supreme Court did not extend "relate to" "to the furthest stretch of its indeterminacy." *Id.* at 655, 115 S.Ct. 1671 (internal citations and quotations omitted). Specifically, the Supreme Court has repeatedly held that ERISA does not preempt state statutes "of general application that [are] neither directed to ERISA plans nor interfere[ ] with their administration." *Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 277 (3d Cir.2001).

■ To determine whether state law claims have some connection to ERISA, courts should "look to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as the nature of the effect of the state law on ERISA plans." *Nat'l Sec. Sys. v. Iola,* 700 F.3d 65, 84 (3d Cir.2012). Several courts have held that making "fraudulent or misleading statements to induce participation in an ERISA plan" subjects individuals to state law liability. *Id.* The Third Circuit also analyzed ERISA's objectives and explained that pre-plan fraudulent inducement claims are not the sorts of issues ERISA was meant to preempt: "these sorts of claims rest on misrepresentations made about an ERISA plan before that plan's existence. They are not premised on a challenge to the

actual administration of the plan." *Id.* at 85.

■ Contrary to Pension Strategies' assertions that a "state court is ill-equipped to address" the claims in this case (Pension Strategies R & R Obj. at 2, ECF No. 58), the Third Circuit explained that a state court is fully equipped to handle pre-investment fraud claims:

> To the extent that a reviewing court would need to examine the provisions of the plan in considering the claims, it would be only to determine whether the representations made ... regarding plan structure and benefits were at odds with the plan itself, or with the plaintiffs' understanding of the benefits afforded by the plans. This is not the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar. To the contrary, that comparison requires only a cursory examination of the plan provisions and turns largely on legal duties generated outside the ERISA context.

*Id.* (internal citations and quotations omitted).

The Third Circuit further explained that because ERISA's objectives did not extend to covering pre-investment fraud, preemption of state law pre-investment fraud claims is inappropriate:

> Nor do we think these claims strike at that area of core ERISA concern—funding, benefits, reporting, and administration—in which the use of state, rather than federal, law threatens to undermine the goals of Congress in enacting ERISA in the first place.

*Id.* (internal citations and quotations omitted).

In this case, Bar–David's claims rest on misrepresentations and omissions made about the Plan before it existed. Although Bar–David also claims that misrepresenta-

tions continued after the Plan was in place, these allegations relate to the Plan's status under federal tax law, rather than the Plan's "actual administration." *Id.;* (Compl. at ¶ 13). Bar–David is not suing as a beneficiary of an ERISA plan and does not seek to enforce any rights under any potential ERISA plan.

Instead, Bar–David seeks to enforce duties that Defendants allegedly owe based on attorney-client and fiduciary relationships that existed outside of the Plan. (*Id.* at ¶¶ 39, 40, 50–53). For example, Bar–David claims that Defendants fraudulently misrepresented the tax advantages of the Plan; negligently made false representations in "selling an investment" to Bar–David; breached preplan fiduciary duties by failing to disclose conflicts of interest before giving financial advice; acted as negligent insurance and financial advisors in recommending the Plan; and violated the New Jersey Consumer Fraud and RICO Acts. (*Id.* at ¶¶ 63, 71, 72, 76, 79, 89, 92). All of these claims relate to pre-investment fraud of the type the Third Circuit explicitly stated did not concern ERISA.

Because ERISA's objectives do not extend to the sort of pre-investment fraud Bar–David alleges in the Complaint, ERISA preemption is not appropriate in this case. Having determined that ERISA does not preempt the sorts of claims alleged in the Complaint, I need not reach Judge Arleo's other well-reasoned determination, i.e., that the Plan does not qualify as an ERISA plan.

### ii. *Federal tax issues*

■ Pension Strategies and Shankman also invoke federal question jurisdiction on the grounds that Bar–David's Complaint involves complicated questions concerning the federal tax code and fiduciary duties under ERISA. (Shankman Obj. to R & R at 9–10, ECF No. 59; Pension Strategies Obj. to R & R at 1–2, ECF No. 58). Shankman and Pension Strategies' argument that Bar–David's Complaint requires "an in depth analysis of the federal tax code" is not persuasive. (Shankman Obj. to R & R at 10.)

As explained above, the fiduciary duties that Bar–David alleges were breached arose before the implementation of the Plan and exist independent of it. Furthermore, the validity of Bar–David's claims does not depend on an analysis of the federal tax code, but rather on an analysis of Defendants' various representations and omissions regarding the Plan. A New Jersey state court is perfectly capable of comparing Defendant's representations about the Plan to the Plan's substance, as described in part by IRS Determination Letters about the Plan's status under the federal tax code. (Pension Strategies' Post–Hr'g Br. at 3–4, ECF No. 50). Indeed, this is precisely the inquiry that the Third Circuit deemed "a cursory examination of the plan provisions" that "turns largely on legal duties generated outside the ERISA context." *Nat'l Sec. Sys.,* 700 F.3d at 85. A state court is well equipped to handle this inquiry.

### III. CONCLUSION

Pension Strategies and Shankman have failed to meet their burden of showing that the Court has subject matter jurisdiction of this case. Federal question jurisdiction is not available because ERISA preemption does not apply, and there are no other claims invoking a federal question. Therefore, removal is not proper pursuant to 28 U.S.C. § 1441. I adopt Judge Arleo's Report and Recommendation. Bar–David's motion to remand (ECF No. 13) is **granted,** and the case is hereby remanded to state court.

An appropriate Order accompanies this Opinion.

## ORDER

This matter comes before the court on the Report and Recommendation (ECF No. 57) of Hon. Madeline C. Arleo, United States Magistrate Judge, recommending that the Plaintiffs' motion to remand this action to State court (ECF No. 13) be granted; and Objections to the Report and Recommendation having been filed by Defendants Pension Strategies, LLC (ECF. No. 58) and Arthur D. Shankman and Arthur D. Shankman & Co. (ECF No. 59); and the Court, pursuant to Fed. R. Civ. Proc. 78, having reviewed the Report and Recommendation and the Parties' submissions; and it further

**APPEARING** that Judge Arleo's Report and Recommendation was issued after a hearing on September 19, 2014 on the matter as well as extensive supplemental briefing by the parties (Docket Nos. 51, 52, 53, 54, 55); and it further

**APPEARING** that Judge Arleo's Report and Recommendation to grant the motion to remand was based on a finding that federal question jurisdiction was lacking; and it further

**APPEARING** that Judge Arleo correctly determined that the Employee Retirement Income Security Act (ERISA) did not preempt the state law claims alleged in the Complaint; and it further

**APPEARING** that there is no alternative basis for jurisdiction in this Court; and for good cause appearing;

**IT IS,** this 22nd day of September, 2014,

**ORDERED** that the Report and Recommendation is adopted and Plaintiffs' motion to remand the action to State Court is **GRANTED.**

## REPORT AND RECOMMENDATION

ARLEO, United States Magistrate Judge.

**THIS MATTER** comes before the Court upon the motion of Plaintiffs Dani Bar–David, Michal Bar–David, and Octal Corporation ("Plaintiffs") to remand the pending action to Superior Court of New Jersey, Essex County. (Dkt. No. 13–1). Defendants Pension Strategies ("Pension Strategies"), Arthur D. Shankman & Co., and Arthur D. Shankman (collectively "Shankman Defendants") oppose this motion. (Dkt. Nos. 18, 21). Pursuant to Local Civil Rule 72.1(a)(2), the Honorable Kevin McNulty, U.S.D.J., referred the Motion to the undersigned for Report and Recommendation. The Court heard oral argument on February 19, 2014. Following the hearing, the Court ordered supplemental briefing on the Motion to Remand. (Dkt. Nos. 51, 52, 53, 54, 55). After considering the papers and oral arguments made in connection with this motion, for the reasons set forth herein, and for good cause shown, this Court respectfully recommends that Plaintiff's Motion to Remand be **GRANTED.**

## I. BACKGROUND

On August 28, 2013, the Plaintiffs filed a Complaint in the Superior Court of New Jersey, Essex County, Law Division. In the Complaint, Plaintiffs generally allege that the Defendants made various misrepresentations and omissions that fraudulently induced them to participate in a defined benefit pension plan under 26 U.S.C. § 412(i) (the "Plan"), to purchase a life insurance policy to fund the Plan, and to continue investing in the Plan year after year. (Dkt. No. 1–1, Compl. ¶¶ 1, 3–6, 10–13). Plaintiffs allege that the Plan was actually an abusive tax shelter, that the IRS disallowed all of the deductions claimed with respect to the funding of the

plan, and that Defendants knew or should have known the plan was defective. (*Id.* at ¶ 10).

Plaintiffs allege that Amir Abramov ("Abramov") handled most of Dani Bar–David's insurance needs, as well as some of his retirement and investment needs. (*Id.* at ¶ 39). Plaintiffs allege that Arthur D. Shankman individually and on behalf of Shankman & Co., as well as Abramov, solicited Plaintiffs Dani Bar–David and Octal Corporation's participation in the Plan. (*Id.* at ¶ 40). In addition to the first meeting and until Dani Bar–David implemented the Plan on November 17, 2003, Defendants, Shankman and Abramov, allegedly met with Plaintiffs at Dani Bar–David's office five to six more times to solidify Plaintiffs' participation in the Plan. (*Id.* at ¶ 41). Plaintiffs allege that Defendants omitted and/or misrepresented material facts to Plaintiffs to induce them into initially participating in the Plan and to continue participating in the Plan year after year. (*Id.* at ¶ 13). Plaintiffs allege that the Defendants made misrepresentations or misleading statements to Plaintiffs including, but not limited to, the following:

- The Plan was a tax advantaged retirement investment that would provide benefits including a death benefit;
- The Plan would be paid for in five (5) years of contributions;
- The contributions to the Plan are 100% tax deductible;
- The Plan was a safe investment with no risk;
- The Plan was compliant with the Internal Revenue Code and IRS regulations and has been approved by the IRS;
- The investment in the Plan was guaranteed to grow at a minimum rate of return of 5%;
- The principal of Plaintiffs' contributions into their 412(i) Plan would always be safe and could never be lost;
- Plaintiffs' investment would grow at a minimum rate of return of 5%;
- A 412(i) plan was like a retirement plan and the contributions were considered by the IRS to be an ordinary and necessary business expense; and
- Plaintiffs could have access to their investment after ten (10) years at which time Plaintiffs could withdraw their money tax-free.

(*Id.* at ¶¶ 41, 63). Plaintiffs also allege that all Defendants failed to disclose material facts to Plaintiffs, including, but not limited to, the following:

- That a substantial percentage of the money invested by Plaintiffs was used to pay Defendants exorbitant commissions and that virtually all of the money invested during the first year was immediately lost because of this;
- That the Plan would be funded with insurance policies that the IRS considered to be "springing cash value" policies that in turn would cause scrutiny of the Plan by the IRS;
- That the 412(i) Plan was a highly risky investment for the Plaintiffs;
- That the IRS perceived these type of plans as abusive tax shelters and not compliant with IRC 412(i) and that the IRS was not going to allow the deduction to the contribution into these types of plans;
- That the IRS viewed these types of plans as "listed transactions";
- The Plan did not comply with the Internal Revenue Code;
- The contributions to the plan were not tax deductible;

- The Plaintiffs will owe income tax on their contributions to the Plan;

- Contributions paid into a 412(i) plan would not be considered an ordinary and necessary business expense by the IRS;

- The IRS would in all reasonable probability assess substantial penalties and interest.

(*Id.* at ¶¶ 47, 53, 66).

As to Defendant Pension Strategies, the third party administrator of the Plan, Plaintiffs allege that from its inception, Pension Strategies knew or should have known that the Plan was defective when adopted, and that the deductions Plaintiffs claimed on the Octal corporate tax returns would be disallowed. (*Id.* at ¶¶ 51–52). Plaintiffs also claim that Pension Strategies knew of certain material facts regarding the Plan and intentionally failed to disclose them to Plaintiffs. (*Id.* at ¶ 53). Plaintiffs allege that had they been fully informed about the features of the Plan that they would not have participated in it. (*Id.* at ¶¶ 47–48). However, as a result of their participation in the Plan, Plaintiffs were audited by the IRS and issued deficiency notices. (*Id.* at ¶ 56). Plaintiffs allege that the IRS assessed various back taxes, penalties, and interest against Octal Corporation for the years 2006 and 2007. (*Id.* at ¶¶ 54–58).

Plaintiffs brought this action in New Jersey naming as Defendants all of the participants in the allegedly fraudulent scheme for the misrepresentations and omissions that induced them to initially participate in the Plan and to continue participating in the Plan year after year. (*Id.* at ¶ 13). Plaintiffs assert claims against all the Defendants for: (1) fraud; (2) negligent misrepresentations; (3) breach of fiduciary duty; (4) negligence; (5) unjust enrichment; (6) money had and money received; (7) violation of the New Jersey Consumer Fraud Act; (8) violation of New Jersey RICO Act; (9) breach of contract; and (10) breach of the duty of good faith and fair dealing. (*Id.* at ¶¶ 62–102).

On October 3, 2013, Defendant Pension Strategies filed a Notice of Removal contending, *inter alia*, that the action arises under, and asserts claims falling within the scope of, the exclusive civil enforcement provisions of ERISA and that the action poses one or more substantial federal questions, involving the federal tax laws and related ERISA provisions. (Dkt. No. 1, Notice of Removal, at ¶ 3). Subsequently, Defendant Pension Strategies filed a Motion to Dismiss for lack of jurisdiction and failure to state a claim. (Dkt. No. 9). On November 1, 2013, Plaintiffs filed a Motion to Remand contending that the action should be remanded because the claims are predominately pre-investment fraud type claims and are not preempted by ERISA. (Dkt. No. 13). The Court heard oral argument on February 19, 2014 and ordered supplemental briefing on the motion.

## II. DISCUSSION

A district court has subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. § 1331. A claim brought in state court may be removed to federal court under 28 U.S.C. § 1441. A party may seek to remand a civil action back to state court based on an alleged defect in the removal procedure, or lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). A party opposing remand must show that removal was proper. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). In deciding a motion to remand, the court must resolve any

factual dispute in favor of remand. *Entrekin v. Fisher Scientific Inc.*, 146 F.Supp.2d 594, 604 (D.N.J.2001).

■ As a threshold matter, the Court must decide the narrow issue of whether a pension benefit plan that, at all times, has only covered the sole owner of a corporation but contemplated the potential participation of additional employees is governed by ERISA. Plaintiff Dani Bar–David alleges that the Plan cannot qualify as an "employee benefit plan" under ERISA because he was sole proprietor of Octal Corporation, the sole participant in the Plan, and neither he nor his spouse was considered an "employee" within the meaning of ERISA. Defendant Pension Strategies contends that the language of the Plan clearly envisions that employees other than the owner of Octal could and would become participants in the Plan and that the Plan would be governed by ERISA. The Shankman Defendants similarly contend that the Plan is governed by ERISA since Octal employees had a right to participate in the Plan.

■ ERISA covers two kinds of employee benefit plans: employee welfare benefit plans and employee pension benefit plans. *See* 29 U.S.C. §§ 1002(1), 1002(2). The Secretary of Labor has issued regulations clarifying the definitions contained in § 1002. *See* 29 C.F.R. § 2510.3–3. The term "employee benefit plan" is defined and clarified in 29 C.F.R. § 2510.3–3. Section 2510.3–3(a) states that ERISA Title I protections only apply to "employee benefit plans." 29 C.F.R. § 2510.3–3(a). The language of § 2510–3.3(a) states that "plans without employees" are not "employee benefit plans" and will not be covered by ERISA Title I. Section 2510.3–3(c)(1) then explains that an individual and his or her spouse who wholly own a business are not employees for purposes of this section. Therefore, any plan that has as its only participant a sole owner and his or her spouse, is a "plan without employees" and does not qualify for Title I ERISA coverage. A plan that includes at least one employee in addition to the sole owner, however, will be covered by Title I ERISA coverage. This interpretation has been adopted by various courts. *See, e.g., Matinchek v. John Alden Life Ins. Co.*, 93 F.3d 96 (3d Cir.1996); *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 294 n. 6 (5th Cir.1999) ("[A] plan must have employees besides the owners to qualify as an ERISA plan."); *Bates v. Provident Life & Accident Ins. Co.*, 596 F.Supp.2d 1054 (E.D.Mich.2009) (holding that although the insurance policy was initially governed by ERISA that when Plaintiff became the sole participant and sole shareholder is became a "plan without employees" and was no longer subject to ERISA's requirements); *Meiszner v. Suburban Bank & Trust Co.*, 397 F.Supp.2d 952, 955 (N.D.Ill. 2005) (same).

The Third Circuit in *Matinchek v. John Alden Life Ins. Co.*, 93 F.3d 96 (3d Cir. 1996), addressed whether an employee welfare benefit plan was governed by ERISA and held "that an insurance coverage plan covering only a sole business owner and his or her [spouse] cannot qualify as an 'employee welfare benefit plan' under ERISA." *Id.* at 97; *but see Leckey v. Stefano*, 263 F.3d 267, 270 (3d Cir.2001) (holding the plans were governed by ERISA as each had at least one employee-participant). The Court noted that "[a]t least five courts of appeal have similarly recognized that ERISA does not govern a 'plan' that is merely an insurance policy under which the only beneficiaries are the company's owners." *Matinchek*, 93 F.3d at 101 (citations omitted).

In *Yates v. Hendon*, 541 U.S. 1, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004), the Supreme Court confirmed this holding in

*Matinchek.*[1] In *Yates,* the Court explained that "[p]lans that cover only sole owners or partners and their spouses, the regulation instructs, fall outside Title I's domain. Plans coverings working owners and their nonowner employee's fall entirely within ERISA's compass." *Id.* at 21, 124 S.Ct. 1330 (internal citations and footnotes omitted); *Leonard v. Educators Mutual Life Ins. Co.,* 620 F.Supp.2d 654, 663 (E.D.Pa.2007) (explaining how the Supreme Court confirmed the *Matinchek* holding in part).

As previously mentioned, the narrow issue in this case is whether a pension benefit plan that, at all times, only covered an owner but contemplated the participation of additional employees is governed by ERISA. Defendants, without citing any case law or statutory support, contend that the intent and language of the Plan clearly envisions that employees other than the owner of Octal could become participants in the Plan, which makes the plan subject to ERISA. *Matinchek* and its progeny, however, make clear that any plan that has as its only participant a sole owner and his

or her spouse, is a "plan without employees" and does not qualify for Title I ERISA coverage. The Court finds that this interpretation is consistent with the wording in § 2510.3–3 which states that "the term 'employee benefit plan' shall not include any plan ... under which no employees are participants covered under the plan." 29 C.F.R. § 2510.3–3(b). Section 2510.3–3(c)(1) explains that an individual and his or her spouse who wholly own a business are not employees for purposes of this section. ERISA status should not rise and fall on the possibility of an employee's participation in a plan, but on the reality of who is actually covered by the plan.

It is undisputed that Dani Bar–David is the sole owner of Octal Corporation and the only participant in the Plan. While Octal Corporation had other employees working for the company, none of them ever participated in the Plan due to ineligibility or apparent waiver. Thus, regardless of how the Plan was initially set up, the only evidence before the Court is that Bar–David was the only participant the Plan has ever had.[2] Accordingly, the

---

1. Portions of the Third Circuit's discussion in *Matinchek* are arguably overruled by the Supreme Court's decision in *Yates,* 541 U.S. 1, 124 S.Ct. 1330. For instance, the Third·Circuit stated, "Congress clearly intended 'employer' and 'employee' to be mutually exclusive definitions under ERISA." *Matinchek,* 93 F.3d at 101. In *Yates,* however, the Court held that working owners could be participants in employee benefit plans where there were non-employer participants in the plan. *Yates,* 541 U.S. at 16, 124 S.Ct. 1330 (stating "a working owner can wear two hats, as an employer and employee"). *Matinchek's* relevant holding that a plan only covering a sole owner and his or her spouse is not an ERISA plan remains intact. *Yates,* 541 U.S. at 21, 124 S.Ct. 1330. *See also Leonard,* 620 F.Supp.2d at 663 n. 10 (explaining how portions of *Matinchek* were overruled by *Yates* ).

2. There is case law that discusses *when* to assess ERISA qualification for pension plans

and welfare benefit plans. *See In re Stern,* 345 F.3d 1036, 1041 (9th Cir.2003), *cert. denied,* 541 U.S. 9, 124 S.Ct. 1657, 1671, 158 L.Ed.2d 356 (2004). While this Court is not bound by a decision from another Circuit, its persuasiveness is stronger when considering ERISA-related issues. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 55–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting ERISA legislative history which revealed a congressional intention, via enactment of ERISA's pre-emption term, to ensure national uniformity of regulation, predictability and consistency of decisions); *Matinchek,* 93 F.3d at 101. In *In re Stern,* the Court explained that "we are instructed to assess ERISA qualification for a pension plan by gauging whether there is at least one extant employee beneficiary." *In re Stern,* 345 F.3d at 1041 (citing *In re Lowenschuss,* 171 F.3d 673, 680 (9th Cir.1999), *cert. denied,* 528 U.S. 877, 120 S.Ct. 185, 145 L.Ed.2d 156 (1999)). The Court explained that this assessment should be

Court finds that the Plan is a "plan without employees" and is not an employee pension benefit plan governed by ERISA. Because ERISA does not govern the Plan at issue in this case, the Court is without federal subject matter jurisdiction and respectfully recommends that Plaintiff's motion to remand be granted.

### III. CONCLUSION

Having considered the parties' written submissions, oral arguments, and for good cause shown, it is respectfully recommended that Plaintiff's Motion to Remand be **GRANTED**.

Date: September 4, 2014.

made based on the plan's composition *at the time of the events in question* in the action before the court, as opposed to at the plan's inception. *Id.* (emphasis added). To the contrary, ERISA qualification of welfare benefit plans are determined at the time the plan is established, regardless of whether the plan participants change. *Id.* (citing *Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404 (9th Cir.1995), *cert. denied,* 516 U.S. 942, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995)); *see, e.g., Leonard,* 620 F.Supp.2d at 665. Here, regardless of when we look at the composition of the Plan, it is undisputed that the only participant that the Plan has ever had is Dani Bar–David. The Plan never had any other employee beneficiaries.