[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14752

_____

D.C. Docket No. 1:16-cv-23231-FAM

WHIRLPOOL CORPORATION,

Plaintiff - Appellee,

versus

FREIGHT REVENUE RECOVERY OF MIAMI, INC.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 26, 2018)

Before JILL PRYOR and BRANCH, Circuit Judges, and REEVES,[*] District Judge.

REEVES, District Judge:

Whirlpool Corporation obtained a judgment in the amount of $176,749 against Freight Revenue Recovery of Miami, Inc., in the United States District Court for the Western District of Michigan. Whirlpool discovered during litigation that Freight Revenue had deposited checks payable to Whirlpool into Freight Revenue's bank accounts in Florida, so it filed an action to enforce the judgment in the United States District Court for the Southern District of Florida. Whirlpool sought to garnish several accounts, including a Charles Schwab account valued at more than $800,000, which Freight Revenue asserted was a profit-sharing plan containing assets Freight Revenue had contributed for the benefit of its owner, Richard Dawson. Freight Revenue argues on appeal that the district court erred by permitting Whirlpool to garnish the account containing Dawson's assets to satisfy the judgment against Freight Revenue. Because the district court did not adequately explain why the funds held in the profit-sharing account could be imputed to Freight Revenue, we vacate and remand.

## I.    BACKGROUND

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Freight Revenue is a freight bill auditor, which audits its clients' freight and logistics records for overcharges.  It had an agreement with Whirlpool under which Freight Revenue would recover freight fees that Whirlpool had been overcharged, and would retain thirty-nine percent of those funds as payment for its services. Whirlpool alleged that Freight Revenue stopped remitting payments at some point, even though it had continued collecting overcharges on Whirlpool's behalf. Whirlpool sued Freight Revenue and Richard Dawson in the Western District of Michigan in October 2014, alleging that Freight Revenue had breached the parties' contract and that both defendants had engaged in civil racketeering and had been unjustly enriched.  Freight Revenue counterclaimed, alleging that Whirlpool had not paid commissions due under the parties' contract for certain work Freight Revenue had already performed.

The Michigan district court referred the matter to a case evaluation panel, which found in favor of Whirlpool and against Freight Revenue in the amount of $208,487.  The panel also found in favor of Freight Revenue on its counterclaim in the amount of $31,738.  The parties accepted the case evaluation award and the Michigan district court entered judgment in favor of Whirlpool and against Freight Revenue in the amount of $176,749.

Whirlpool then sought to collect the judgment by registering it in the Southern District of Florida and garnishing various accounts, including a Charles

3

Schwab Account called "Freight Revenue Recovery Sys Inc. Profit Sharing Plan/Schwab One Pension PT-PPLAN."  Freight Revenue filed a motion to dissolve the writ of garnishment, arguing that the Schwab account was a profit sharing account belonging to Dawson and was exempt from garnishment under Florida Statutes § 222.21.  This provision, "Exemption of pension money and certain tax-exempt funds or accounts from legal processes" provides, in relevant part:

> . . . any money or other assets payable to an owner, a participant, or a beneficiary from, or any interest of any owner, participant, or beneficiary in, a fund or account is exempt from all claims of creditors *of the owner, beneficiary, or participant* if the fund or account is . . . [m]aintained in accordance with a master plan, volume submitter plan . . . or any other plan or governing instrument that has been preapproved by the [IRS] as exempt from taxation . . . under [26 U.S.C. § 401(a) and other provisions of the Internal Revenue Code.]

Fla. Stat. § 222.21(2)(a) (emphasis added).

The United States magistrate judge assigned to the case conducted evidentiary hearings in May and June 2017.  Dawson is the president, board of directors, and sole shareholder of Freight Revenue, and has been the sole trustee of the Plan since its inception.  Dawson testified that he founded Freight Revenue in the 1970s and established the profit sharing plan (the "Plan") in 1981.  Dawson had been the only participant in the Plan since at least 2012.

Freight Revenue employees did not make contributions to the Plan.  Instead, the only moneys that went into the Plan were Freight Revenue's contributions that

4

purportedly were deposited for the benefit of Freight Revenue employees.  Freight Revenue made contributions to the Plan in 2008 through 2014, but did not contribute any funds in 2015 or 2016.  Dawson acknowledged that he utilized this arrangement to reduce Freight Revenue's tax liability and to plan for his own retirement.

Whirlpool introduced a variety of evidence to show that the Plan was not a qualified profit sharing plan as defined by the Internal Revenue Code and therefore was not exempt from garnishment under Florida Statutes § 222.21.  For example, Whirlpool's pension expert suggested that Freight Revenue had failed to meet minimum coverage requirements and that it had discriminated in favor of highly compensated employees, in violation of 26 U.S.C. §§ 401(a)(3) and 401(a)(4).  Whirlpool also sought to show that Freight Revenue exceeded permissible yearly contributions to the Plan, in violation of §§401(a)(16) and  415.  Dawson acknowledged that he caused the Plan to purchase property that he and his wife owned, which Whirlpool argued constituted impermissible self-dealing.  *See* 26 U.S.C. § 4975.

The magistrate judge held evidentiary hearings [DE 86-1; 88] and then recommended denying the motion to dissolve the writ of garnishment because the Schwab account was not maintained in accordance with the provisions of the Internal Revenue Code ("IRC") mentioned in Florida Statutes § 222.21.  Freight

5

Revenue objected to the magistrate judge's recommendation but conceded that the Schwab account was not maintained in accordance with the IRC, and therefore was not exempt from garnishment under Florida law. Instead, Freight Revenue's sole objection was that—despite the Plan's shortcomings—the Plan assets belong to Dawson and cannot be garnished to satisfy a judgment against Freight Revenue.

Whirlpool presented the following arguments in favor of garnishment to the district court: (1) the Schwab account is not an employee benefits plan and is simply an account holding Freight Revenue assets; (2) the funds are recaptured income of Freight Revenue; (3) even if Dawson owns the funds, he is personally liable as Freight Revenue's director and sole shareholder; and (4) the fund transfers should be avoided as fraudulent conveyances. The district court reached only the first argument, concluding that "the Charles Schwab account is simply an account holding Freight Revenue assets," which may be garnished to satisfy Whirlpool's judgment.

## II.    DISCUSSION

The magistrate judge held evidentiary hearings and made factual findings adopted by the district court. We "review a district court's conclusions of law *de novo* and its findings of fact for clear error." *Wexler v. Anderson*, 452 F.3d 1226, 1230 (11th Cir. 2006). "Yet, the clearly erroneous standard does not govern an appellate court's review of district court findings made under a mistaken view of

controlling legal principles.  Such questions involve interpretations of law or applications of law to particular facts and are subject to *de novo* review." *Flagship Marine Servs., Inc. v. Belcher Towing Co.*, 966 F.2d 602, 604 (11th Cir. 1992) (internal citations omitted).

We begin with the basic proposition that a judgment creditor generally may not satisfy its judgment by garnishing property of an entity that was not a party to the underlying judgment.  *See Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.*, 183 F.3d 1277, 1285 (11th Cir. 1999) (citing *Live Supply, Inc. v. C & S Plumbing, Inc.*, 402 So. 2d 505, 506-07 (Fla. Dist. Ct. App. 1981)).  Additionally, there is a rebuttable presumption that a corporation and its owner are distinct entities and generally are not liable for one another's debts.  *See Molinos Valle Del Cibao, C. or A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011); *Ramaria Familienstiftung v. United States*, 643 F. Supp. 139, 146 (S.D. Fla. 1986) (citing *Shearson Hayden Stone, Inc. v. Lumber Merchants, Inc.*, 500 F. Supp. 491, 501-02 (S.D. Fla. 1980)); *Murphy v. Murphy*, 170 So. 856, 871 (Fla. 1936).

The district court concluded that the Plan is subject to Whirlpool's writ of garnishment because it is not an employee benefit plan as defined under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Title I of ERISA protects employees by providing minimum standards for the administration and investment of employee benefit plans.  *Raymond B. Yates,*

7

*M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 6, 124 S. Ct. 1330, 1335, 158 L. Ed. 2d 40 (2004).  Title II of ERISA amended the IRC, conditioning the eligibility of employee benefit plans for preferential tax treatment on compliance with the requirements of Title I.  *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 746, 124 S. Ct. 2230, 2236-37, 159 L. Ed. 2d 46 (2004).

An "employee benefit plan," as defined under ERISA, does not include any plan "under which no employees are participants."  29 C.F.R. § 2510.3-3(b).  ERISA's implementing regulations provide that an individual is not an employee of a business he wholly owns.  § 2510.3-3(c).  Here, the district court determined that because Dawson, Freight Revenue's owner and the Plan's only participant since 2012, is not an employee, the Plan is not an employee benefit plan under ERISA.

The district court's analysis was incomplete.  The first problem was its failure to examine the instrument creating the plan.  Such an examination is necessary to determine whether a valid plan exists and the legal character of the account.

But even if the district court's analysis thus far is correct (and we do not decide whether it is),[1] it is still unclear why the Plan's failure to qualify as an

---

[1] Freight Revenue contends that the Plan is not a "plan without employees" because there were other participants besides Dawson prior to 2012.  While this Court has not addressed the issue,

8

ERISA plan would result in Freight Revenue's ownership of the funds. Florida's garnishment statute explicitly states that a "fund or account" need not "be maintained in accordance with a plan or governing instrument that is covered by any part of the Employee Retirement Income Security Act for money or assets payable from or any interest in that fund or account to be exempt from claims of creditors." Fla. Stat. § 222.21(2)(b). So the account's non-compliance with ERISA is not dispositive as to whether Freight Revenue versus Dawson is the account's true owner or whether the account is shielded from garnishment under Florida law. Again, a fundamental factual determination regarding the character of the account is necessary to answer that question.

Freight Revenue concedes that there may be "severe tax consequences" based on the Plan's failure to comply with ERISA and/or the IRC. However, there must be some additional legal basis for imputing assets to an employer once the

---

some courts have concluded that the status of a pension plan is determined based on its composition at the time of the events at issue before the court. *See In re Lowenschuss*, 171 F.3d 673, 680 (9th Cir. 1999); *Bar-David v. Econ. Concepts, Inc.*, 48 F. Supp. 3d 759, 771-72 (D.N.J. 2014); *Meiszner v. Suburban Bank & Trust Co.*, 397 F. Supp. 2d 952, 956-57 (N.D. Ill. 2005). Other courts have come out the other way. *See, e.g., Int'l Res., Inc. v. N.Y. Life Ins. Co.*, 950 F.2d 294, 298 (6th Cir. 1991) ("[T]he mere fact the company no longer has several employees does not transform what was already an ERISA plan into a non-ERISA plan.") That there is a split is unsurprising. ERISA has elaborate, statutorily-mandated termination procedures. *See Beck v. PACE Int'l Union*, 551 U.S. 96, 102-03, 127 S. Ct. 2310, 2316-17, 168 L. Ed. 2d 1 (2007) (internal citations omitted). But a Department of Labor regulation, 29 C.F.R. § 2510.3-3(c)(1), states that individuals are not "employees" for ERISA purposes if they wholly own their business, which may mean that a plan could become disqualified under the regulations. Whether a plan may "temporarily terminate" reveals a tension between the statute and the regulation that we need not (and do not) resolve here. Should it prove necessary to do so, the district court should address it in the first instance.

employer has transferred ownership of them to another individual or entity, as Freight Revenue ostensibly did in this case. If the Charles Schwab account is part of an ERISA plan, it is protected from garnishment, under both Florida law and ERISA, until it satisfies all liabilities to the beneficiaries. *See* Fla. Stat. § 222.21(2)(a)(2); 26 C.F.R. § 1.401-1(a)(3)(iv). If it is a nonexempt trust under IRC § 402(b), it may owe the IRS for deductions it illegally claimed. But in neither situation is it clear that the owner of the assets could or would have changed.

The district court alluded to alternative bases for attributing the Plan assets to Freight Revenue when it remarked that Dawson directed the actions that formed the basis of the underlying judgment in favor of Whirlpool. But the court stopped short of making the necessary factual findings to conclude that the account had been misused or that the corporate form was not observed. *See Molinos Valle Del Cibao, C. por A.*, 633 F.3d at 1349 (citing *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. Dist. Ct. App. 2008)) (to disregard corporate fiction and hold corporation's owners liable, plaintiff must prove elements for veil-piercing). The court also failed to make findings necessary to consider Whirlpool's argument that Dawson held the assets in a constructive trust. *See Citizens' State Bank v. Jones*, 131 So. 369, 372 (Fla. 1930) (holding that constructive trust must be proven by clear and convincing evidence).

Whirlpool's remaining arguments are based on Florida statutes prohibiting

10

certain transfers of assets.  Whirlpool contends that Dawson is personally liable under Florida Statutes §§ 607.06401 and 607.0834, which prevent a board of directors of a corporation from authorizing a distribution to shareholders if the corporation would be unable to pay its debts in the usual course of business. Likewise, Whirlpool argues that Dawson is liable under §§ 222.30 and 726.105, because he fraudulently converted Freight Revenue's assets to the Plan with the intent to prevent Whirlpool from collecting its judgment.  Because the district court failed to address either of these fact-intensive inquiries, we are not equipped to do so in the first instance.

## III.    CONCLUSION

Based on the foregoing discussion, we **VACATE** and **REMAND** this case to the district court for further proceedings consistent with this opinion.  The district court should expressly determine the legal owner of the assets in the Charles Schwab account.

11